## MATTER OF MOGHARRABI

### In Deportation Proceedings

A-23267920

A-26850376

*Decided by Board June 12, 1987*

(1) In *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), the United States Supreme Court held that the "clear probability" of persecution standard employed for withholding of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h) (1982), does not converge with, and may not be equated with, the "well-founded fear" of persecution standard used for asylum under section 208, 8 U.S.C. § 1158 (1982). *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985), is therefore overruled insofar as it held that the two standards were not meaningfully different, and in practical application converged.

(2) The well-founded fear of persecution standard used in section 208 of the Act is significantly different from the clear probability standard used in section 243(h).

(3) An applicant for asylum under section 208 of the Act has established a well-founded fear if a reasonable person in his circumstances would fear persecution.

(4) A reasonable person may well fear persecution even where its likelihood is significantly less than clearly probable.

(5) An alien's own testimony in an asylum case may be sufficient, without corroborative evidence, to prove a well-founded fear of persecution where that testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.

(6) *Matter of Acosta's* requirement that an applicant for asylum show, inter alia, that the potential persecutor "could easily become aware" that the applicant possesses a belief or characteristic the persecutor seeks to overcome by some punishment is changed by omitting the word "easily."

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Nonimmigrant—remained longer than permitted (both respondents)

ON BEHALF OF RESPONDENTS:
Mark Raymond Quinn, Esquire
Bragar & Quinn
1200 18th Street, N.W., Suite 210
Washington, D.C. 20036

ON BEHALF OF SERVICE:
Arthur H. Gottlieb
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

Interim Decision #3028

In a decision dated August 16, 1985, an immigration judge found the respondents deportable as charged and denied their application for asylum and withholding of deportation. Three months' voluntary departure was granted in lieu of deportation. The respondents appealed from the denial of asylum and withholding of deportation. The respondents' appeal will be sustained, and the application for asylum will be granted. Oral argument before the Board is denied.

The respondents, husband and wife, are both natives and citizens of Iran. Both respondents were admitted to the United States as nonimmigrant students on or about September 8, 1978. The female respondent's status was subsequently changed to that of a spouse of a nonimmigrant student. The respondents were authorized to remain in this country until February 27, 1982, but they remained beyond that time. Orders to Show Cause and Notice of Hearing (Forms I-221) were issued against them on August 28, 1984, charging them with deportability as overstays under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982). At a joint deportation hearing begun on November 5, 1984, and concluded on July 2, 1985, the respondents conceded their deportability. The only issues at the hearing, and the only issues on appeal, concern the male respondent's application for asylum and withholding of deportation.[1]

An alien who is seeking withholding of deportation from any country must show that his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h)(1) of the Act, 8 U.S.C. § 1253(h)(1) (1982). In order to make this showing, the alien must establish a "clear probability" of persecution on account of one of the enumerated grounds. *INS* v. *Stevic*, 467 U.S. 407, 413 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution. *Id.* at 429-30. Under the Refugee Act of 1980, Pub. L. No. 96-212, 94 Stat. 102, withholding of deportation is mandatory. Thus, once an alien has established that he qualifies for that relief, and that he is not ineligible under the provisions of section 243(h)(2), it must be granted, and he cannot then be returned to the country where he would face persecution. He can, however, be sent to another country under certain circumstances. In this important regard, withholding of deportation dif-

---

[1] Only the male respondent submitted an application for asylum. The female respondent is included in her husband's application. *See* 8 C.F.R. § 208.2 (1987). References hereafter to "the respondent" refer to the male respondent.

440

fers from asylum, which may be denied in the exercise of discretion to aliens who establish statutory eligibility for the relief.

In order to establish eligibility for a grant of asylum, an alien must demonstrate that he is a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1982). *See* section 208 of the Act, 8 U.S.C. § 1158 (1982). That definition includes the requirement that an alien demonstrate that he is unwilling or unable to return to his country because of persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The meaning of the term "well-founded fear" has been the subject of considerable controversy and litigation. The Board previously took the position that, as a practical matter, the showing required to establish a well-founded fear of persecution for asylum purposes was the same as that required to establish a clear probability of persecution for purposes of withholding of deportation. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985). However, the Supreme Court has recently rejected this approach. In *INS* v. *Cardoza-Fonseca*, 480 U.S. 421 (1987), the Court held that the clear probability and well-founded fear standards do in fact differ, and that it was Congress' intent that they differ. The Court found it reasonable to assume that Congress intended to make it more difficult to establish absolute entitlement to withholding of deportation under section 243(h) than to establish mere eligibility for asylum under section 208. *Id.* at 443–44. In so ruling, the Court rejected that part of our decision in *Matter of Acosta, supra*, wherein we held that the "clear probability" standard and the "well-founded fear" standard are not meaningfully different and, in practical application, converge. *Id.* at 229. That portion of our decision in *Matter of Acosta* has therefore been effectively overruled.

In *INS* v. *Cardoza-Fonseca, supra*, the Court reiterated the rule in *INS* v. *Stevic, supra*, that in order to establish a clear probability of persecution under section 243(h) of the Act, an alien must prove that it is "more likely than not" that he will be persecuted. However, the Court held, such a probable showing of persecution need not be made in order to establish a well-founded fear of persecution under section 208 of the Act. The Court specifically declined to attempt a detailed definition of "well-founded fear," or an explanation as to how that term should be applied. Noting that there is "obviously some ambiguity" in the term, the Court left a more concrete definition to the process of case-by-case adjudication. *Id.* at 448.

It is clear that to a large degree the meaning of "well-founded fear" can in fact only be determined in the contexts of individual

cases. Whatever words may be used in a definition, the approach must still be to assess each case independently on its particular merits. Nevertheless, we think that some guidance can be provided and would be helpful. We do not attempt a definitive statement on the meaning of well-founded fear but rather are setting forth a starting point for use in an ongoing effort to formulate a workable and useful definition of the standard in question.

Although, as noted above, the Supreme Court in *INS* v. *Cardoza-Fonseca, supra,* did not attempt to define "well-founded fear," the Court in dictum in *INS* v. *Stevic, supra,* offered this guide for the meaning of well-founded fear: "[S]o long as an objective situation is established by the evidence, it need not be shown that the situation will probably result in persecution, but it is enough that persecution is a *reasonable possibility*." *INS* v. *Stevic, supra,* at 424–25 (emphasis added). In *INS* v. *Cardoza-Fonseca, supra,* the Court noted the "obvious focus on the individual's subjective beliefs" in assessing whether a fear is well founded. *Id.* at 431. Perhaps more helpful, however, was the direction provided by the Court in *Cardoza-Fonseca* when it compared the well-founded fear standard with the clear probability standard of section 243(h) of the Act. Not only are the two terms not identical, the Court noted, but since two different standards were used in the same Act, they must have been intended to have "significantly different" meanings. *Id.* at 448 n. 31. The Court's view that the two terms are "significantly different" thus serves as a starting point in defining the term "well-founded fear." [2]

As suggested by Justice Blackmun in his concurring opinion in *INS* v. *Cardoza-Fonseca, supra,* some guidance regarding the meaning of well-founded fear can be found in decisions of the United States courts of appeals. Prior to the Supreme Court's decision in

---

[2] In addition to footnote 31, the Court also indicated in the body of its decision its approval of a "significantly different" standard for asylum as opposed to withholding of deportation. In discussing the old section 203(a)(7) of the Act, 8 U.S.C. § 1153(a)(7) (1976), repealed by the Refugee Act of 1980, Pub. L. No. 96–212, 94 Stat. 102, the Court stated that it had been "repeatedly recognized" that the "fear of persecution" requirement for refugee admissions under section 203(a)(7) was "significantly different" from the requirement in section 243(h) that the alien show that he "would be" subject to persecution. *INS* v. *Cardoza-Fonseca, supra,* at 434. The Court went on to conclude that when Congress replaced section 203(a)(7) and its "fear of persecution" with section 207, 8 U.S.C. § 1157 (1982), and its "well-founded fear of persecution," it "in no way wished to modify the standard that had been used under § 203(a)(7)." *Id.* at 434–35. Since the term "well-founded fear" is used in section 208 as well as in section 207, the Court further noted, the same lower standard of proof, "significantly different" from the section 243(h) standard, would apply to section 208 as well. *Id.* at 436 n. 18.

*Cardoza-Fonseca,* and after the Court's decision in *INS* v. *Stevic, supra,* a number of the lower courts addressed the issue of the well-founded fear standard and attempted to define that term. The first court of appeals to address the question was the United States Court of Appeals for the Seventh Circuit, in *Carvajal-Munoz* v. *INS,* 743 F.2d 562 (7th Cir. 1984). The court there stated its view that the evidentiary burden of proof in asylum cases was not identical to that in withholding of deportation cases, although it found the two standards to be "very similar." *Id.* at 575. The Supreme Court, as just noted, has indicated that the terms are significantly different. Nevertheless, the Seventh Circuit's view of the showing necessary to establish a well-founded fear of persecution is worth considering. The court held that, in order to establish the well-founded fear of persecution required for asylum,

> [t]he applicant must present *specific* facts establishing that he or she has actually been the victim of persecution or has some other good reason to fear that he or she will be *singled out* for persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* at 574. The court also elaborated on the type of evidence necessary to make this showing:

> Ordinarily, this must be done through objective evidence supporting the applicant's contentions. Sometimes, however, the applicant's own testimony will be all that is available regarding past persecution or the reasonable possibility of persecution. In these situations, the applicant's uncorroborated testimony will be insufficient to meet the evidentiary burden unless it is credible, persuasive, and points to *specific* facts that give rise to an inference that the applicant has been or has a good reason to fear that he or she will be singled out for persecution on one of the specified grounds, or, alternatively or in addition thereto, must show through testimony and corroborative objective evidence that he or she has good reason to fear persecution on one of the specified grounds.

*Id.* at 574. Thus, the Seventh Circuit emphasized the need for the applicant to be specific in his claims, to show that there is a "reasonable possibility" of persecution, and to show that he has "good reason" for his fear of persecution.

The United States Court of Appeals for the Ninth Circuit, after first deciding in *Bolanos-Hernandez* v. *INS,* 767 F.2d 1277 (9th Cir. 1984), that the well-founded fear standard is a lesser one than the clear probability standard, turned to the meaning of well-founded fear in *Cardoza-Fonseca* v. *United States INS,* 767 F.2d 1448 (9th Cir. 1985). The court accepted the rationale of the Seventh Circuit that an applicant for asylum is required to "present 'specific facts' through objective evidence to prove either past persecution or 'good reason' to fear future persecution." *Id.* at 1453, citing *Carvajal-Munoz* v. *INS, supra,* at 574. Like the Seventh Circuit, the Ninth Circuit also addressed the issue of corroborative evidence. Recogniz-

ing the difficulty of obtaining documentary evidence to support an asylum claim, the court held that if such evidence is not available, the applicant's testimony will suffice if it is credible, persuasive, and specific. The court rejected the Government's contention that such an approach to the well-founded fear standard rendered that standard wholly subjective and emphasized that applicants

> must point to specific, objective facts that support an inference of past persecution or risk of future persecution. That the objective facts are established through the credible and persuasive testimony of the applicant does not make those facts less objective. "Mere assertions of possible fear" are still insufficient. *Shoaee v. INS*, 704 F.2d 1079, 1084 (9th Cir. 1983). It is only after objective evidence sufficient to suggest a risk of persecution has been introduced that the alien's subjective fears and desire to avoid the risk-laden situation in his or her native land become relevant.

*Cardoza-Fonseca v. United States INS, supra*, at 1453.

In *Diaz-Escobar v. INS*, 782 F.2d 1488 (9th Cir. 1986), the Ninth Circuit attempted to refine its requirement that there be both subjective and objective showings, saying: The subjective component requires a showing that the alien's fear is genuine. The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a *reasonable fear* that the petitioner faces persecution." *Id.* at 1492 (emphasis added). The court concluded: What is critical is that the alien prove his fear is subjectively genuine and objectively reasonable." *Id.* The inquiry into the reasonableness of an applicant's fear was also alluded to by the Ninth Circuit in *Garcia-Ramos v. INS*, 775 F.2d 1370 (9th Cir. 1985), where the court stated that the well-founded fear standard "implicates a requirement of objective reasonableness. In other words, there must be some basis in reality or reasonable possibility that a petitioner would be persecuted." *Id.* at 1374.

The Sixth Circuit has similarly embraced the notion that the "more generous" well-founded fear standard of proof comprises both a subjective and an objective element. In *Yousif v. INS*, 794 F.2d 236 (6th Cir. 1986), the court held that while an applicant for asylum "may prevail upon establishing a subjective fear of persecution, the [applicant's] assertions of fear must nonetheless be supported by objective evidence." *Id.* at 243–44; *see also Youkhanna v. INS*, 749 F.2d 360 (6th Cir. 1984).

Like the Seventh, Ninth, and Sixth Circuits, the Fifth Circuit foretold the Supreme Court's decision in *INS v. Cardoza-Fonseca, supra*, and held that the well-founded fear standard requires a lesser degree of proof than the clear probability standard. *Guevara*

*Flores* v. *INS*, 786 F.2d 1242 (5th Cir. 1986).[3] The Fifth Circuit also agreed with the other courts that the concept of a well-founded fear was at least partially a subjective one, insofar as fear is a subjective matter, and partially an objective one, because the fear is required to be well founded. However, the Fifth Circuit offered a somewhat more concrete definition. The court held: An alien possesses a well-founded fear of persecution if a reasonable person in her circumstances would fear persecution if she were to be returned to her native country." *Id.* at 1249. This reasonable person standard was subsequently adopted by the Second Circuit, in *Carcamo-Flores* v. *INS*, 805 F.2d 60 (2d Cir. 1986).

We agree with and adopt the general approach set forth by the Fifth Circuit; that is, that an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution. As noted by the Second Circuit, this "reasonable person standard appropriately captures the various formulations that have been advanced to explain the well-founded fear test." *Carcamo-Flores* v. *INS, supra,* at 68. It is a standard that provides a "common sense" framework for analyzing whether claims of persecution are well founded. Moreover, a reasonable person may well fear persecution even where its likelihood is significantly less than clearly probable.

In determining whether the alien has met his burden of proof, we recognize, as have the courts, the difficulties faced by many aliens in obtaining documentary or other corroborative evidence to support their claims of persecution. Although every effort should be made to obtain such evidence, the lack of such evidence will not necessarily be fatal to the application. The alien's own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.[4] On the other hand, as pointed out in the Office of the

---

[3] The Third Circuit is the only court which, prior to the Supreme Court's decision in *INS* v. *Cardoza-Fonseca, supra,* consistently held that the well-founded fear standard under section 208 of the Act is equivalent to the clear probability standard under section 243(h). The court first stated this view in *Rejaie* v. *INS,* 691 F.2d 139 (3d Cir. 1982), which was decided prior to the Supreme Court's decision in *INS* v. *Stevic, supra.* The Third Circuit specifically reaffirmed its position following *Stevic. Sotto* v. *United States INS,* 748 F.2d 832 (3d Cir. 1984); *see also Sankar* v. *INS,* 757 F.2d 532 (3d Cir. 1985). The Fourth Circuit declined to decide the issue. *Cruz-Lopez* v. *INS,* 802 F.2d 1518 (4th Cir. 1986).

[4] The requirement that an alien provide a "plausible and coherent account" of why he fears persecution is rooted in the International Refugee Organization, Manual for Eligibility Officers No. 175, ch. IV, Annex 1, Pt. 1, § C19, p. 24 (May 1950). *See INS* v. *Cardoza-Fonseca, supra,* at 438 n. 20.

445

United Nations High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees* (Geneva, 1979) ("*Handbook*"), the allowance for lack of corroborative evidence does not mean that "unsupported statements must necessarily be accepted as true if they are inconsistent with the general account put forward by the applicant." *Id.* at para. 197. Similarly, very generalized statements of fear will in most cases not suffice. In general, the assessment of the application for asylum should be a qualitative, not a quantitative, one.

Where the country at issue in an asylum case has a history of persecuting people in circumstances similar to the asylum applicant's, careful consideration should be given to that fact in assessing the applicant's claims. A well-founded fear, in other words, can be based on what has happened to others who are similarly situated. The situation of each person, however, must be assessed on its own merits. *See Handbook, supra*, at para. 43.

We note that although our decision in *Matter of Acosta* has been effectively overruled by *INS* v. *Cardoza-Fonseca, supra*, insofar as *Acosta* held that the well-founded fear standard and the clear probability standard may be equated, much of our decision remains intact and good law. Indeed, we still find in *Acosta* some guidance regarding the meaning of a well-founded fear. In *Acosta*, we set forth four elements which an applicant for asylum must show in order to establish a well-founded fear of persecution. What we required was that the evidence establish that

(1) the alien possesses a belief or characteristic a persecutor seeks to overcome in others by means of punishment of some sort; (2) the persecutor is already aware, or could easily become aware, that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and (4) the persecutor has the inclination to punish the alien.

*Matter of Acosta, supra*, at 226.

In our view, these requirements, for the most part, survive the Supreme Court's decision in *Cardoza-Fonseca* and are still useful guidelines in assessing an asylum application. However, we have determined that one small but significant change in these requirements should be made in view of the Court's ruling. The second requirement should be changed by omitting the word "easily." Thus, it is enough for the applicant to show that the persecutor could become aware that the applicant possesses the belief or characteristic in question. The omission of the word "easily" lightens the applicant's burden of proof and moves the requirements as a whole into line with *Cardoza-Fonseca*. Of course, all these requirements

446

must now be considered in light of the lower burden of proof which will be imposed on asylum applicants generally.

It must also be remembered that an alien who succeeds in establishing a well-founded fear of persecution will not necessarily be granted asylum. He must also show that the feared persecution would be on account of his race, religion, nationality, membership in a particular social group, or political opinion. Thus, for example, aliens fearing retribution over purely personal matters, or aliens fleeing general conditions of violence and upheaval in their countries, would not qualify for asylum. Such persons may have well-founded fears, but such fears would not be on account of their race, religion, nationality, membership in a particular social group, or political opinion. *See, e.g., Sanchez-Trujillo* v. *INS,* 801 F.2d 1571 (9th Cir. 1986); *Contreras-Aragon* v. *INS,* 789 F.2d 777 (9th Cir. 1986); *Diaz-Escobar* v. *INS, supra; Lopez* v. *INS,* 775 F.2d 1015 (9th Cir. 1985); *Zepeda-Melendez* v. *INS,* 741 F.2d 285 (9th Cir. 1984); *Martinez-Romero* v. *INS,* 692 F.2d 595 (9th Cir. 1982); *Matter of Pierre,* 15 I&N Dec. 461 (BIA 1975). Finally, an applicant for asylum must also show that he merits the relief as a matter of discretion.

While under *Matter of Acosta, supra,* we were able to consider an application for asylum and withholding of deportation as, for most purposes, one, this approach requires some modification after *INS* v. *Cardoza-Fonseca, supra.* Given that the core of evidence and testimony presented in support of the asylum and withholding applications will in almost every case be virtually the same, such evidence and testimony may still be presented in a single hearing. However, in actually adjudicating the applications, a clear delineation of the findings should be made as to each application. We anticipate that as a general rule the asylum application, with its lower burden of proof, will be adjudicated first. If the applicant is found eligible for asylum, and worthy of the relief as a matter of discretion, there may be no need to determine as well whether a clear probability of persecution exists.

We now turn to the application of these new standards to the case presently before us. The respondent fears persecution in Iran primarily because of an altercation he had with an official or agent of the regime of the Ayatollah Khomeini. The respondent testified and attested to the following facts regarding that incident. In February of 1981, while in the United States, the respondent went with an Iranian friend to the Iranian Interests Section at the Algerian Embassy. His purpose was to document his continuing student status in order to enable him to continue receiving funds from relatives in Iran. To this end, he took with him photocopies of his pass-

port and his Arrival-Departure Record (Form I-94). When he presented the photocopies to a student who was working at the Embassy, he was told that the originals were required. According to the respondent, he was informed that the originals were necessary because students who did not have them had probably submitted them to the Immigration and Naturalization Service in connection with asylum applications. The student-employee was insistent, and the respondent's friend asked to see the supervisor. The supervisor appeared, but further trouble ensued. The student apparently grabbed the respondent's friend's neck, but the supervisor separated them. The student then told the respondent's friend that he and "his kind had better keep their eyes and ears open because 'their day' would come soon." In response, the respondent told him that "he and his kind had robbed Iran of all that was worth living for and that they were nothing more than religious fascists stuffing their pockets with the nation's wealth." According to the respondent, the student then drew a gun, and he and his friend ran out the door. The respondent testified that there were cameras all around the room recording these events. A witness for the respondent testified at the hearing that he accompanied the respondent and his friend to the Algerian Embassy, although he waited in the car and did not go inside with them. This witness testified that, when the respondent and his friend returned to the car, they were nervous, and a couple of people were following them. It is the respondent's contention that he is now known to Khomeini officials and that as a result he has good reason to fear persecution if returned to Iran. The respondent also testified that he had participated in anti-Khomeini demonstrations in the United States.

After careful consideration of the entire record, we have concluded that a reasonable person in the respondent's circumstances would fear persecution if returned to Iran. We find the respondent's account of why he fears persecution based on his political opinions to be plausible, detailed, and coherent. The respondent's account of the incident at the Embassy appears to us to be credible, and there is nothing in the record to otherwise suggest that the respondent lacks credibility. The respondent clearly expressed his political views at the Iranian Interests Section and his opinions were extremely derogatory to the regime in power. The Service does not dispute that opponents of the Ayatollah Khomeini are often persecuted for their opposition. In this case, a reasonable person in the respondent's position would fear that his opposition to that regime has become known to those who are both in a position, and who have the inclination, to punish him for it. Under these circumstances, we find that the respondent has met his burden of showing

a well-founded fear of persecution in Iran. Given the statements made to agents of the Khomeini regime by the respondent while in the Algerian Embassy, any persecution which might occur would be on account of political opinion.

There are no adverse factors of record in this case. We find no basis for considering a discretionary denial of relief. The application for asylum will accordingly be granted. We therefore find it unnecessary to decide whether the respondent has also established a clear probability of persecution for section 243(h) purposes. Accordingly, the following orders will be entered.

**ORDER:** The appeal is sustained.

**FURTHER ORDER:** The application for asylum is granted.