76 F.3d 379
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Doda LJUCOVIC, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-4070.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1996.
 
 1
 Before: MERRITT, Chief Judge; RYAN, Circuit Judge; and CLELAND, District Judge.*
 
 
 2
 CLELAND, District Judge.
 
 
 3
 Doda Ljucovic ("Petitioner") seeks review, pursuant to 8 U.S.C. § 1105a(a), of a final order of deportation issued by the Board of Immigration Appeals on August 4, 1994. While conceding deportability, Petitioner seeks asylum under 8 U.S.C. § 1158(a) and withholding of deportation pursuant to 8 U.S.C. § 1253(h). We deny the petition.
 
 I.
 
 4
 Petitioner is a 35-year old, single, male, native citizen of Yugoslavia. He is an ethnic Albanian, born in the province of Montenegro, an area which is 15% to 20% Albanian. He entered the United States without inspection in December 1984 by walking across the United States-Mexico border near San Diego, California, after traveling to Mexico from Yugoslavia through Germany. An order to show cause was served on Petitioner on July 6, 1989, charging entry without inspection. On October 16, 1989, Petitioner, appearing with his attorney, conceded deportability as charged in the order to show cause but sought asylum under 8 U.S.C. § 1158(a) and withholding of deportation pursuant to 8 U.S.C. § 1253(h); in the alternative, Petitioner sought voluntary departure pursuant to 8 U.S.C. § 1254(e). Petitioner based his application on an assertion that he had a well-founded fear of persecution upon return to Yugoslavia based upon his status as an ethnic minority, his belief that Albanians should have rights equal to other Yugoslavian ethnic groups, and his demonstrations in Yugoslavia and the United States expressing his beliefs. In an advisory opinion issued on November 27, 1989, the State Department indicated that it did not believe that he had demonstrated a well-founded fear of persecution upon return to Yugoslavia or Albania; the opinion was based on an absence of independent information about his activities and on "information about country conditions and other relevant factors available to the Department of State through its conduct of foreign affairs...."
 
 
 5
 At a hearing on April 25, 1990, the immigration judge found that Petitioner failed to establish either a well-founded fear of persecution under 8 U.S.C. § 1158(a) or a clear probability of persecution pursuant to 8 U.S.C. § 1253(h). The immigration judge did grant Petitioner's request for voluntary departure pursuant to 8 U.S.C. § 1254(e).
 
 
 6
 Petitioner timely appealed the immigration judge's decision to the Board of Immigration Appeals ("BIA"). In a decision dated August 4, 1994, the BIA affirmed the immigration judge's decision in all respects.
 
 II.
 
 7
 Review of the BIA's factual determinations is subject to the substantial evidence standard of review. The statute provides that "the Attorney General's findings of fact, if supported by reasonable, substantial, and probative evidence on the record considered as a whole, shall be conclusive." 8 U.S.C. § 1105a(a)(4). "All the substantial evidence standard requires is that the BIA's conclusion, based on the evidence presented be substantially reasonable." Klawitter v. INS, 970 F.2d 149, 151 (6th Cir.1992) (quoting Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986)). "Substantial evidence is thus a deferential standard which 'plainly does not entitle a reviewing court to reverse ... simply because it is convinced that it would have decided the case differently.' " Klawitter, 970 F.2d at 151-152 (quoting DiCicco v. INS, 873 F.2d 910, 912 (6th Cir.1989)). "[I]n order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it." Klawitter, 970 F.2d at 152 (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992)). Legal determinations are reviewed de novo by the court. Adhiyappa v. INS, 58 F.3d 261, 265 (6th Cir.1995).
 
 III.
 
 8
 Petitioner's first assignment of error is that the BIA denied his request for asylum "solely" because he did not provide sufficient corroborating evidence, when, he argues, corroborating evidence was not required. Petitioner's second assignment of error is that the BIA "failed to give any weight or credence to the current country conditions in Yugoslavia although petitioner testified as to the atrocities committed by the Yugoslavian government against minorities and especially the Albanians." Finally, Petitioner argued that the BIA wrongfully denied his request for a second advisory opinion on current conditions in Yugoslavia.
 
 
 9
 In order to gain asylum, Petitioner must show that he meets the statutory definition of "refugee." 8 U.S.C. § 1158(a). Section 1158(a) provides, in pertinent part, that an "alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of section 1101(a)(42)(A) of this title." Section 1101(a)(42)(A) provides that to be a refugee, one must be unable or unwilling to return to, and unable or unwilling to avail himself of the protection of, his home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. "To establish that his fear of persecution is well-founded, a petitioner must present specific facts which demonstrate actual persecution or establish ' "good reason to fear persecution on one of the specified grounds." ' " Dolores v. INS, 772 F.2d 223, 226 (6th Cir.1985) (quoting Youkhanna v. INS, 749 F.2d 360, 361 (6th Cir.1984) (quoting Carvajal-Munoz v. INS, 743 F.2d 562 (7th Cir.1984)).
 
 
 10
 The standard for withholding of deportation is similar, but it provides less discretion to the Attorney General and imposes a more stringent standard on the alien. See 8 U.S.C. § 1253(h)(1). Section 1253 provides that the Attorney General shall not deport any alien if she determines that his "life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." To meet the standard for withholding of deportation, Petitioner must demonstrate a "clear probability of persecution," amounting to proof of the likelihood of persecution by a preponderance of the evidence. See INS v. Stevic, 467 U.S. 407, 424 (1984). The "well-founded fear" standard for asylum eligibility is more generous than the "clear probability" standard for entitlement to withholding of deportation. INS v. Cardoza-Fonseca, 480 U.S. 421, 449-50 (1987). Thus, an alien who cannot establish a right to asylum would not be eligible for withholding of deportation.
 
 
 11
 Under the well-founded fear of persecution standard, the applicant cannot rely on speculative conclusions or mere assertions of fear of possible persecution but must offer reasonably specific information showing a real threat "that he as an individual will be subject to persecution if forced to return to his native land." Dally v. INS, 744 F.2d 1191, 1195 (6th Cir.1984) (emphasis added); accord Dolores v. INS, 772 F.2d 223, 225 (6th Cir.1985). The following criteria are used to determine whether a case involves potential persecution:
 
 
 12
 (1) the alien must possess a belief or characteristic a persecutor seeks to overcome in others by means of punishment of some sort;
 
 
 13
 (2) the persecutor is already aware, or could ... become aware, that the alien possesses this belief or characteristic;
 
 
 14
 (3) the persecutor has the capability of punishing the alien; and
 
 
 15
 (4) the persecutor has the inclination to punish the alien.
 
 
 16
 Matter of Mogharrabi, 19 I. & N. Dec. 439, 446 (1987). An asylum applicant must show that persecution would be feared by a reasonable person in his circumstances, Mogharrabi, 19 I. & N. Dec. at 445, and that the feared persecution pertains to him as an individual, rather than to the population generally. Dally v. INS, 744 F.2d 1191, 1195 (6th Cir.1984). The alien has the burden of proof at both stages. 8 C.F.R. § 208.13 (1992).
 
 
 17
 In support of his first assignment of error, that the BIA wrongfully denied his request for asylum "solely" because he did not provide sufficient corroborating evidence, Petitioner relies on Mogharrabi 's statement:
 
 
 18
 [T]he lack of [corroborative] evidence will not necessarily be fatal to the application. The alien's own testimony may in some cases be the only evidence available, and it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.[1]
 
 
 19
 19 I. & N. Dec. at 445. The statements preceding and following this quotation, though, place it in context. Mogharrabi stressed that "every effort should be made to obtain [corroborating] evidence" id.; Mogharrabi does not stand for the proposition that corroborating evidence, if available, is not important or helpful in proving a case. The court cautioned, "the allowance for lack of corroborative evidence does not mean that 'unsupported statements must necessarily be accepted as true if they are inconsistent with the general account put forward by the applicant.' " Id. at 446 (quoting Office of the United Nations High Commissioner for Refugees, The Handbook on Procedures and Criteria for Determining Refugee Status under the 1951 Convention and the 1967 Protocol Relating to the Status of Refugees (Geneva, 1979). Clearly, Mogharrabi was concerned about situations in which the alien's allegations, though truthful and deserving of a grant of asylum, are not of such a nature that the alien could be expected to produce corroborating evidence; the court stated, "we recognize, as have the courts, the difficulties faced by many aliens in obtaining documentary or other corroborative evidence to support their claims of persecution." Id. at 445.
 
 
 20
 Petitioner's case is not one envisioned by Mogharrabi, in which no corroborating evidence is necessary, because corroborating evidence of the events to which he testified should be readily available, and because Petitioner's testimony was not "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." Petitioner's asserted "belief or characteristic a persecutor seeks to overcome in others by means of punishment of some sort" is his "belief that Albanians should have human rights and equal rights to Yugoslavians." Petitioner's Brief at p. 7. He testified that he demonstrated in the United States and in Yugoslavia, protesting human rights violations in Yugoslavia and that he was arrested in Yugoslavia as a result of his protests. He also provided the affidavit of a fellow demonstrator, Dokas Lucomici, who attested that he knew Petitioner and engaged in anti-Yugoslavian demonstrations in Yugoslavia and in the United States with him.
 
 
 21
 Petitioner testified that he participated in demonstrations against the government of Yugoslavia "a lot of times, seven, eight, ten, more than that," beginning on March 11, 1984. Joint Appendix (JA) at 29. About a thousand people participated in this first demonstration, all of them Albanian. JA at 30. According to Petitioner, "Local authorities were called in, even the military was called in to bring it under control and disperse the people who were demonstrating." Petitioner was not arrested for this demonstration, though others were, and "some ... were severely beaten, even killed." JA at 30A. He testified that he was first arrested on May 11, 1984; at that time, the police beat him up and asked him who was involved in organizing the demonstration. He was jailed for two days and then released. Petitioner responded affirmatively to his attorney's question, "You were arrested about six or seven times that you were arrested?" JA at 31. He later answered affirmatively his attorney's question, "You said on your application you were detained, interrogated, and imprisoned four or five times for a day or two. Is that how many times you were detained, four or five times?" JA at 32. In addition to participating in demonstrations, Petitioner testified that he distributed brochures that were "anti-Yugoslavian, equal rights." JA at 32. He testified that he did not have any evidence in his possession to prove that he was in these demonstrations in Yugoslavia, JA at 32, though he asserted that agents of the Yugoslavian government took "a lot of pictures" at these demonstrations. JA at 34. Petitioner testified that he continued to demonstrate in the United States, answering affirmatively when his lawyer's questioned him as to whether he continued to participate in demonstrations when he arrived in Detroit and whether he participated in demonstrations in Washington, D.C. also. JA at 34. According to his testimony, Petitioner participated in his first demonstration just nine months before leaving Yugoslavia, and he got his passport about a year before he left the country--before he began to demonstrate.
 
 
 22
 On cross-examination, Petitioner testified that he entered the United States by first going to Germany to get a visa to Mexico, and then entering the United States from Mexico. He testified that he had been to Germany once before and returned to Yugoslavia willingly; this was in 1983. JA at 38-39. He testified that he gave no thought to asking the German government for permission to stay there and did not consider migrating to Italy--even though he could have done so without a visa--because "no members of my generation said that they would go to Italy and live." (JA 39-40).
 
 
 23
 There are numerous inconsistencies within Petitioner's testimony. For example, his testimony reveals that he obtained a passport a few months before he began to demonstrate, though he alleges that his reason for leaving Yugoslavia was his fear of retribution for demonstrating. He did not explain why he only began participating in anti-government protests in 1984, the same year he left the country, or what caused his sudden interest in this activity. Nor did he explain why he did not seek asylum in Italy, Germany, or during the first five years of residence in the United States. No witnesses testified on Petitioner's behalf at the hearing. The proof that his activities would engender retribution in Yugoslavia was speculative at best, in light of the fact that the demonstrations in which he participated occurred more than ten years ago, and the country has experienced civil war in the meantime. Furthermore, numerous courts of appeals have found no persecution even where applicants for asylum have been interrogated or detained. See Skalak v. INS, 944 F.2d 364 (7th Cir.1991) (two interrogations, each 3 days long; no persecution); Zalega v. INS, 916 F.2d 1257 (7th Cir.1990) (three arrests in Poland and detention up to 36 hours; no persecution); Kubon v. INS, 913 F.2d 386 (7th Cir.1990) (5 days detention in Poland; no persecution); Mendez-Efrain v. INS, 813 F.2d 279, 283 (9th Cir.1987) (4 days detention by Salvadoran military; no persecution); Sovich v. Esperdy, 319 F.2d 21 (2d Cir.1963) (brief confinement for political opposition under conditions of totalitarian rule is not necessarily persecution).
 
 
 24
 "[I]n order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it." Klawitter at 152 (citing INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1 (1992)). Substantial evidence supports the BIA's factual determination that Petitioner failed to show that he possesses a belief or characteristic a persecutor seeks to overcome in others by means of punishment of some sort and that the persecutor is already aware, or could become aware, that the alien possesses this belief or characteristic. Little evidence supports the contrary conclusion; certainly the evidence does not compel it.
 
 IV.
 
 25
 In his second and third assignments of error, Petitioner argues that the BIA wrongfully failed to take into consideration the current country conditions in Yugoslavia and wrongfully failed to obtain a second advisory opinion from the State Department in response to changed conditions in Yugoslavia. Neither of these assignments of error is well taken, because the petitioner, not the BIA, bears the burden of coming forward with evidence to prove his case.
 
 
 26
 Petitioner conceded at oral argument that he never moved to reopen his case in order to submit evidence of changed conditions. He proffered no reason for this failure, but instead asserted that the BIA should have obtained such information on its own by obtaining a second advisory opinion from the State Department. The BIA was under no such duty.
 
 
 27
 There is no indication that the BIA disregarded evidence presented, and evidence of conditions in the country would not compel the BIA to find that an alien is entitled to asylum. This court has made it clear that conditions in the country generally, in and of themselves, do not merit a finding of a well-founded fear of persecution. Thus, documentary evidence depicting a general lack of freedom or probability of human rights abuses in the alien's native land, which evidence does not pertain to the alien individually, will not establish persecution, nor will the alien's own conjecture or subjective allegations. Dolores v. INS, 772 F.2d 223, 225 (6th Cir.1985). The petitioner must establish that the feared persecution pertains to him as an individual, rather than to the population generally. Dally v. INS, 744 F.2d 1191, 1195 (6th Cir.1984). He has failed to do so.
 
 V.
 
 28
 The BIA's decision is supported by substantial evidence and shall be AFFIRMED. The petition is DENIED.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Petitioner misquoted Mogharrabi and, to some extent, took the statement in question out of context. The quotation here is corrected