[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12356
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 6, 2011
JOHN LEY
CLERK

Agency No. A070-661-981


ANDRES JUAN-ESTEBAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 6, 2011)

Before BLACK, WILSON and FAY, Circuit Judges.

PER CURIAM:

Andres Juan-Esteban, a native and citizen of Guatemala proceeding *pro se*, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") final order of removal and denying his applications for cancellation of removal, asylum, and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1229b(b)(1), 1231, 8 C.F.R. § 208.16(c). Juan-Esteban argues that the BIA erred when it denied his application for cancellation of removal because he demonstrated that his two U.S. citizen children will suffer an exceptional and extremely unusual hardship if he is removed to Guatemala. He also contends that the BIA erred in denying his application for asylum. He states that he was persecuted by guerillas because he is of Mayan ancestry and because he refused to join their group. He also asserts that the indigenous peoples of Guatemala have been the subject of brutal torture and attacks at the hands of the guerillas and the Guatemalan government. For the reasons stated below, we deny the petition for review.

I.

In 2007, the Department of Homeland Security issued a notice to appear to Juan-Esteban, charging that he was removable as an alien present in the United

2

States without being inspected or paroled, who entered the United States at a time and place not designated by the Attorney General. Juan-Esteban filed an application for asylum, withholding of removal, and CAT relief, claiming persecution on account of his political opinion. In his application, Juan-Esteban stated that he fled Guatemala after he was threatened and beaten by guerillas for refusing to give them aid. He explained that, in 1993, five armed men approached him while he was working in the fields with his father. The men demanded food and money, and also ordered Juan-Esteban to join their group. After Juan-Esteban and his father refused to help the guerillas, the guerillas beat Juan-Esteban and threatened to kill him and his father. The guerillas eventually left, but they stated that they would return to get Juan-Esteban in ten days. Juan-Esteban explained that, if he returned to Guatemala, he would be forced to join the guerillas or would be killed for not supporting them. In addition to his asylum application, Juan-Esteban also filed an application for cancellation of removal and adjustment of status, in which he asserted that his removal would cause exceptional and extremely unusual hardship to his two U.S. citizen children.

At an asylum hearing, Juan-Esteban testified that he was born in the village of San Juan Ixcoy in Guatemala. He explained that he was of Mayan ancestry. He had two children, nine-year-old Gerardo and eight-year-old Eleazar, both of whom

were U.S. citizens. Juan-Esteban's mother continued to live in San Juan Ixcoy. When Juan-Esteban was living in Guatemala, he worked with his father in the fields. His family used to own land in Guatemala, but lost it during the civil war.

Juan-Esteban testified that he left Guatemala because he had been threatened by the guerillas. He explained that, after the civil war ended, the guerillas turned into the Maras gangs, and continued to be active in the country. In 1993, Juan-Esteban and his father were working in the fields when a group of guerillas came up to them and asked for food. Juan-Esteban's father refused to give them food because he was a member of the civil patrol and knew that the government did not want anyone to give aid to the guerillas. The guerillas then beat Juan-Esteban. He and his father eventually managed to escape. Juan-Esteban did not receive any medical attention after that incident, but his father treated his injuries using home remedies. Later, the guerillas came to the family's home and shoved weapons in Juan-Esteban's face. Notably, Juan-Esteban did not testify that the guerillas had targeted him based on his Mayan ancestry. Juan-Esteban acknowledged that his father and mother were not harmed by the guerillas after he left Guatemala.

With respect to his claim for cancellation of removal, Juan-Esteban explained that his son Gerardo was having difficulties in school and also had

problems with his vision. He stated that his children would not have access to adequate medical treatment or educational opportunities in Guatemala. In addition, he testified that Mayans were "not liked" in Guatemala and were constantly "humiliated" by the non-indigenous population.

The IJ rendered an oral decision denying Juan-Esteban's applications for relief. First, the IJ determined that Juan-Esteban was not entitled to cancellation of removal because he failed to establish that his removal would cause an exceptional and extremely unusual hardship to his U.S. citizen children. The IJ also denied Juan-Esteban's claim for asylum. Although the IJ found Juan-Esteban's testimony to be credible, the IJ concluded that Juan-Esteban had failed to establish past persecution. The IJ observed that Juan-Esteban had been attacked by the guerillas because he refused to join them, rather than on account of a protected ground. The IJ also explained that Juan-Esteban's fear of general violence perpetrated by the Maras gangs did not establish that he had a well-founded fear of future persecution. The IJ also denied Juan-Esteban's claims for withholding of removal and CAT relief.

Juan-Esteban appealed to the BIA, but the BIA dismissed his appeal. First, the BIA determined that Juan-Esteban did not qualify for cancellation of removal because he had failed to demonstrate that his removal would cause an exceptional

and extremely unusual hardship to his children. With respect to Juan-Esteban's claim for asylum, the BIA explained that the incident where the guerillas tried to recruit Juan-Esteban did not amount to past persecution because it was well-settled that a guerilla organization's interest in recruiting an individual does not relate to a protected ground for asylum.

The BIA also explained that Juan-Esteban had failed to demonstrate that the Guatemalan government would be unwilling or unable to protect him from the guerillas or gangs. The BIA also noted that Juan-Esteban had not shown that it would be unreasonable for him to avoid persecution through internal relocation within Guatemala. The BIA observed that Juan-Esteban's parents had continued to live in the same village without experiencing any harm. The BIA recognized that ethnic Mayans such as Juan-Esteban were subject to discrimination in Guatemala, but it concluded that such discrimination did not rise to the level of persecution. Accordingly, the BIA affirmed the denial of Juan-Esteban's asylum claim. Because Juan-Esteban had not established eligibility for asylum, the BIA concluded that he also was unable to meet the higher standard for withholding of removal. Finally, the BIA denied Juan-Esteban's claim for CAT relief because he had not shown that he more likely than not would be tortured by or with the acquiescence of the Guatemalan government.

## II.

We review our own subject matter jurisdiction *de novo*. *Martinez v. U.S. Att'y Gen*, 446 F.3d 1219, 1221 (11th Cir. 2006). Under 8 U.S.C. § 1229b(b)(1), the Attorney General may cancel the removal of a nonpermanent resident who meets certain requirements, including establishing that removal would cause "exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." By statute, we lack jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b . . . of this title." INA § 242(a)(2)(B)(i); 8 U.S.C. § 1252(a)(2)(B)(i).

We have explained that § 1252(a)(2)(B)(i) precludes appellate review of the BIA's determination that an alien has failed to satisfy the "exceptional and extremely unusual hardship" standard for cancellation of removal. *Martinez*, 446 F.3d at 1221-23; *see also Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332-33 (11th Cir. 2003) (same). Nevertheless, we retain jurisdiction to consider constitutional claims or questions of law related to cancellation of removal. 8 U.S.C. § 1252(a)(2)(D); *Martinez*, 446 F.3d at 1221-22.

In this case, we lack jurisdiction to review the BIA's finding that Juan-Esteban failed to establish that his removal would cause exceptional and extremely

7

unusual hardship to his U.S. citizen children. *See Martinez*, 446 F.3d at 1221-23. Although Juan-Esteban asserts in a conclusory fashion that his petition raises legal and constitutional arguments, his brief does not discuss any specific legal or constitutional issues related to his request for cancellation of removal. Accordingly, we dismiss the petition for review with respect to Juan-Esteban's claim for cancellation of removal.

## III.

In a case where the BIA issues its own opinion, we review only the BIA's decision, unless the BIA also adopts the IJ's decision. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision as well. *Id.* Here, the BIA issued its own opinion but applied the same reasoning as the IJ. Therefore, we are reviewing both decisions.

We review the IJ's and the BIA's factual findings to determine whether they are supported by substantial evidence. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*). "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1027. We may reverse the IJ's or the BIA's factual findings only when the record compels a reversal. *Id.*

An applicant for asylum must demonstrate that he is a refugee. INA § 208(b)(1), 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a). An applicant qualifies as a refugee if he suffered past persecution, or has a well-founded fear of future persecution, in his country of origin. 8 C.F.R. § 208.13(b); *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351-52 (11th Cir. 2009). To establish past persecution, the applicant must show that he was persecuted in the past by the government or by persons or organizations that the government is unable or unwilling to control. *Matter of Acosta*, 19 I. & N. Dec. 211, 222 (BIA 1985), *overruled in part on other grounds by Matter of Mogharrabi*, 19 I & N Dec. 439, 441 (BIA 1987). The applicant also must demonstrate that the persecution was on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 208.13(b)(1); *Kazemzadeh*, 577 F.3d at 1351. The Supreme Court has explained that harassment based on an applicant's refusal to join a guerilla group does not necessarily constitute persecution on account of political opinion. *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992); *see also Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004) (evidence that petitioner was persecuted for refusing to cooperate with a guerilla group did not establish that she was persecuted due to her political opinion).

9

In the absence of past persecution, an applicant may establish a well-founded fear of persecution by showing that there is a reasonable possibility that he will be persecuted if he is returned to his country of origin. 8 C.F.R. 208.13(b)(2); *Kazemzadeh*, 577 F.3d at 1352. "The applicant's fear of persecution must be "'subjectively genuine and objectively reasonable.'" *Kazemzadeh*, 577 F.3d at 1352 (quoting *Al Najjar*, 257 F.3d at 1289). An applicant does not have a well-founded fear of persecution if he can avoid the persecution by relocating to another part of his country. 8 C.F.R. 208.13(b)(2)(ii); *Kazemzadeh*, 577 F.3d at 1352. In cases where the persecution is not sponsored by the government, the applicant has the burden of showing that internal relocation is not a reasonable option. 8 C.F.R. § 208.13(b)(3)(i); *Kazemzadeh*, 577 F.3d at 1352. Evidence that an alien's family continues to reside unharmed in the country of removal supports a conclusion that a threat may be avoided by relocation. *See Ruiz* v. *U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) (evidence that petitioner's son and parents continued to live unharmed in Colombia contradicted his claim that he could not avoid persecution through internal relocation).

To qualify for withholding of removal, an applicant must establish that his life or freedom would be threatened in her country of origin on account of a statutorily protected ground. *See* INA § 241(b)(3)(A); 8 U.S.C. § 1231(b)(3)(A).

10

The applicant must demonstrate that he would more likely than not be persecuted upon being returned to his country of origin. *Sepulveda v. U.S. Att'y Gen*, 401 F.3d 1226, 1232 (11th Cir. 2005). An applicant who is unable to satisfy the standard for asylum will generally be unable to meet the more stringent standard for withholding of removal. *Id.* at 1232-33. To qualify for CAT relief, an applicant must demonstrate that it is more likely than not that he would be tortured if he is removed to the designated country of removal. 8 C.F.R. § 208.16(c)(2).

In this case, substantial evidence supports the BIA's finding that Juan-Esteban failed to demonstrate past persecution on account of a protected ground. Juan-Esteban testified that he was threatened and beaten by guerillas after he refused to join their group. However, harassment motivated by a refusal to cooperate with a guerilla group, without more, does not constitute persecution based on a protected ground. *See Elias-Zacarias*, 502 U.S. at 482, 112 S.Ct. at 816; *Sanchez,* 392 F.3d at 438. Although Juan-Esteban testified that his father was a member of the civil patrol, he did not state that the guerillas were aware of that fact or that they targeted him and his father because of their connection to the government. Thus, Juan-Esteban did not establish that the guerillas persecuted him because of his or his father's political opinion. In addition, Juan-Esteban did not present any evidence that the guerillas targeted him because of his Mayan

11

ancestry. This is consistent with his application, which only alleged persecution based on his political opinion. Because Juan-Esteban did not connect the incident where he was beaten by guerillas to one of the protected grounds for asylum, he failed to show past persecution.

Juan-Esteban also did not establish a well-founded fear of future persecution. At the asylum hearing, Juan-Esteban briefly testified that ethnic Mayans are "not liked" and are constantly "humiliated" by the non-indigenous population in Guatemala. Assuming that this testimony was sufficient to raise a claim of future persecution based on Juan-Esteban's Mayan ancestry, the 2008 Country Report demonstrates only that Mayans are subjected to generalized discrimination. The record does not compel the conclusion that the BIA erred when it found that such discrimination was not so extreme as to constitute persecution.

To the extent that Juan-Esteban fears future persecution at the hands of the guerillas, he did not meet his burden of showing that he would be unable to avoid such persecution through internal relocation within Guatemala. *See* 8 C.F.R. §§ 208.13(b)(2)(ii), (b)(3)(i); *Kazemzadeh*, 577 F.3d at 1352. Juan-Esteban admitted that his mother and father were not harmed by the guerillas after he left Guatemala, which suggests that Juan-Esteban would be able to live safely in

12

Guatemala as well. *See Ruiz*, 440 F.3d at 1259. Accordingly, substantial evidence supports the BIA's finding that Juan-Esteban was unable to establish a well-founded fear of future persecution.

Juan-Esteban does not mention his claim for withholding of removal in his appellate brief. Therefore, he has abandoned any challenge to the BIA's denial of that claim. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (noting that issues not raised in a party's appellate brief are deemed abandoned, even where the party is proceeding *pro se*). In any event, because Juan-Esteban failed to meet his burden of proof with respect to asylum, his claim for withholding of removal necessarily fails. *See Sepulveda,* 401 F.3d at 1232-33. Finally, the BIA properly denied Juan-Esteban's claim for CAT relief because he did not present any evidence that it is more likely than not that he would be tortured by, or with the acquiescence of, the Guatemalan government. *See* 8 C.F.R. § 208.16(c)(2).

Accordingly, after review of the record and the parties' briefs, we dismiss the petition for review with respect to Juan-Esteban's claim for cancellation of removal, and deny it with respect to his claims for asylum, withholding of removal, and CAT relief.

**PETITION DISMISSED IN PART, DENIED IN PART.**

13