

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2003

# Santhalingam v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3244

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Santhalingam v. Atty Gen USA" (2003). *2003 Decisions.* Paper 335.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/335

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3244
_____

BREMINI SANTHALINGAM,

Petitioner


v.

JOHN ASHCROFT, Attorney General
of the United States of America,

Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
INS No. A75-846-108
_____

Submitted Under Third Circuit LAR 34.1(a) June 2, 2003

Before: BARRY, FUENTES, and ROSENN, Circuit Judges

(Opinion Filed: July 29, 2003)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

This case concerns the asylum petition of Bremini Santhalingam, a 32-year-old

citizen of Sri Lanka. Santhalingam first claims that she suffered past persecution at the

hands of the anti-government insurgent group known as the Liberation Tigers of Tamil

Eelam ("Tigers"). She asserts that the Tigers persecuted her on account of her cultural and religious attributes and her political opinion by forcing her to perform a religious dance for them several times a week for a period of six years. She next claims that she would face future persecution at the hands of the Tigers if she returned, because she fled from a Tiger-dominated region without permission, and will be branded a traitor. She also raises a fear of future persecution at the hands of the Sri Lankan government because it routinely persecutes Tiger supporters, and she believes she will be identified as such because of her long period of Tiger servitude.

Santhalingam left Sri Lanka and entered the United States in 1997, and then filed a petition for asylum and withholding of deportation with the INS. After a hearing on her asylum claims, an Immigration Judge held that there was insufficient evidence to satisfy the criteria for refugee status, and denied her petition. The BIA affirmed this decision without opinion.[1] Santhalingam petitioned for review in this court. We now deny her petition for review and affirm the decision of the BIA.

I.

The following account is based on Santhalingam's testimony, which the IJ fully credited, and on the 1997 State Department Country Condition Report for Sri Lanka. Santhalingam is a member of the minority Tamil ethnic group in Sri Lanka. The Tamils

---

[1]The issue of whether the BIA's summary affirmance procedure, by which it ratified the IJ's opinion, is constitutional, an issue which is currently before this court in a separate proceeding, was not properly raised by Santhalingam, and thus we do not consider it. We accept the IJ's decision as the authoritative agency decision.

possess many unique language, cultural and religious attributes. Sri Lanka has undergone

significant ethnic turmoil and violence in connection with conflict between the Tamils and

the Sri Lankan government, largely controlled by the majority Sinhalese ethnic group, for

over a decade. A militant faction of the Tamils has formed a separatist group, known as the

Tigers, which has a history of coercing non-Tiger Tamils to join their group, often using

violence. The Tamils are notorious abusers of human rights, with a well-established

reputation for kidnapping, torturing and murdering their enemies, including non-supporters

within the Tamil group. The official Sinhalese-controlled government offers little

protection to Tamils who are the victims of crime and other violence in Sri Lanka.

Santhalingam was a dance teacher, living in a territory controlled by the rebel Tiger

group. In 1988, Santhalingam's two brothers were both been arrested by the Tigers and

taken away. They were never seen again by Santhalingam's family, leaving Santhalingam to

live alone with only her mother.[2] In 1989, 18-year-old Santhalingam, while home by

herself, was accosted by a group of seven Tigers and asked to accompany them to their

camp to talk to her. Santhalingam refused to leave her home without her mother's

permission, but was forcibly pulled into a vehicle by the Tigers, and driven 45-minutes away

to a Tiger camp. There she was told that, because she was Tamil, she had to help the Tigers

by teaching them to perform a Tamil religious dance, traditionally performed in tribute to

the god Nadarajh. Santhalingam considered the dance to be a sacred, private religious ritual

---

[2]Her father was deceased.

that was sacrilegious to perform in front of others, absent special circumstances. She therefore refused to perform for them, although she never articulated the reasons for her refusal to the Tigers. Upon her refusal, Santhalingam was returned to her home, but shortly thereafter the Tigers revisited her, brought her back to their camp, and forced her to perform the dance at gunpoint.

Thereafter, the Tigers picked Santhalingam up from her home, approximately three times a week for a period of about six years, to perform the religious dance for Tiger group members. The Tigers often filmed her while dancing, so that the footage could be used to instruct Tigers on a broader scale how to perform the dance. There is no evidence that Santhalingam ever resisted this arrangement, vocalized her opposition, or attempted to escape or avoid being taken to the Tiger camp.

In 1995, the Tigers urged Santhalingam, along with all other Tamils in her region, to flee because of approaching Sri Lankan government forces. After departing the region, she was directed, along with the other fleeing Tamils, to a new Tiger-controlled area, where she was again forced to teach the dance, now for longer periods of time each day. After a while she grew tired from having to dance so frequently, particularly because the Tigers did not provide her with proper food, medicine or a decent place to sleep, and she refused to perform the dance any longer. The Tigers then forced her to perform cooking and laundry duties for them.

About a month and a half later, in October 1996, she and her mother received a one-day pass to leave the town, and the two fled to a government-run refugee camp for Tamils,

4

at which Tiger supporters, when discovered, were singled out and tortured.  For a brief period of time, Santhalingam lived there in fear that her dancing for the Tigers would cause her to be identified by the government as a Tiger supporter.  Santhalingam soon thereafter left the camp and fled Sri Lanka entirely, with her mother remaining there.  She eventually arrived in the United States, where she filed the instant asylum application.

## II.

We have appellate jurisdiction pursuant to 8 U.S.C. § 1252.  To overturn the IJ's adverse factual determination, a petitioner must show that her evidence "was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 484 (1992).  A refugee is defined as "any person who is outside any country of such person's nationality ... and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).  A petitioner has the burden to show that he or she meets these criteria for refugee status in order to be eligible for a discretionary grant of asylum.  8 U.S.C. § 1158(b); Balasubramanrim v. I.N.S., 143 F.3d 157, 161 (3d Cir. 1998).  Once an asylum seeker is deemed to have met the § 1101(a)(42)(A) criteria for refugee status, asylum will be granted in the discretion of the Attorney General based on the guidelines set forth in 8 U.S.C. §

1158(b).[3] Proof of past persecution creates a presumption of future persecution for purposes of refugee status. 8 C.F.R. § 208.13(b)(1).

A.

Santhalingam's first claim is that she suffered past persecution by the Tigers on account of several protected classifications: her Tamil ethnicity, her opposition to the Tiger cause, and her religious beliefs. Although it appears that the Tigers exploited Santhalingam and subjected her to an experience that was demeaning and, in her eyes, sacrilegious, the IJ concluded that she had not demonstrated that these actions were on account of a protected status.[4] The IJ found that the Tigers' primary reason for singling her out was their need for conscripts to carry out the organization's mission and that Santhalingam's protected classifications were incidental factors. The IJ noted that an organization that forces a person, against his or her will, to carry out tasks for it, not on the basis of the person's protected status, but because it simply needed recruits, is not engaged in persecution on account of membership in a protected category. Matter of R-O-, 20 I&N Dec. 455 (BIA 1992).

---

[3]Santhalingam also seeks mandatory withholding of deportation under § 1231(b)(3)(A). To prove eligibility therefor, it must be shown that there is a "clear probability" of persecution and not simply that there exists a well-founded fear. Secaida-Rosales v. I.N.S., 331 F.3d 297, 306 (2d Cir. 2003). Thus, a petitioner's failure to establish refugee status under the "well-founded fear" standard, necessarily means that he or she is ineligible for withholding of deportation.

[4]The IJ denied the admission of much of Santhalingam's documentary evidence on procedural grounds. However, Santhalingam has not shown how these documents would add to her substantive case. We, therefore, view their exclusion as irrelevant.

6

We agree that Santhalingam's political opposition to the Tigers and her Tamil ethnic status were incidental, given that there is no evidence that the Tigers singled her out on account of these characteristics. Significantly, there is no evidence the Tigers knew of Santhalingam's opposition to their cause, and it has not been shown that the Tigers were conscripting other ethnic Tamils into their service. In view of our ultimate disposition of this matter, <u>see</u> part II.B., <u>infra</u>, we need not take a position on whether Santhalingam's religious beliefs were a basis for her persecution.

B.

The IJ alternatively held that Santhalingam's performance of the dance was likely to have been perceived by the Tigers as voluntary, thereby negating any intent to persecute. We are skeptical that Santhalingam's willingness to perform the dance without resisting suggests voluntariness, especially given the Tigers' well-established reputation for violence and cruelty to opponents and the absence of civil authority from which to seek protection. However, this record does not compel us to reject the IJ's finding. The IJ correctly observed that Santhalingam failed to protest her servitude – either verbally or by attempting to avoid her three-times-a-week abductions – over a period of nearly six years. Her eventual refusal to assist them further, while at the Tiger refugee camp, was made because she was too exhausted to continue and not because she found the dance offensive to her religious beliefs. Hence the IJ possessed a reasonable basis for its conclusion that the Tigers' conduct was not designed to persecute, and therefore Santhalingam's claim of past persecution fails. We therefore need not address whether or not forcing Santhalingam to

7

perform the dance was subjectively persecutive.

C.

Santhalingam next claims that she has a well-founded claim of future persecution. Such a claim must be deemed objectively reasonable. Matter of Mogharrabi, 19 I&N Dec. 439 (BIA 1987). We note that the IJ relied on a completely erroneous fact as the linchpin of its conclusion regarding Santhalingam's fear of future persecution at the hands of the Tigers. It stated that, immediately prior to her departure from the country, Santhalingam left Tiger-dominated territory because the Tigers themselves urged everyone to evacuate due to an impending invasion. Therefore, disloyalty to their cause would not be attributed to her. The record actually shows that, after the evacuation she was relocated to another area also dominated by the Tigers, which she later left voluntarily.

Although the IJ's reasoning on this issue is sparse, there is scant evidence from which to conclude that there is a prospective fear of persecution. We have upheld the IJ's conclusion that the Tigers never intentionally persecuted Santhalingam on account of her religion; rather they perceived her service as voluntary. In the absence of past persecution on account of protected status, there is no reason to suspect they will, upon her return, actively seek to persecute her because of her protected status. Thus, although we might plausibly credit her fear of persecution on account of the Tigers' displeasure at her departure from their camp, we perceive no basis to credit fear of persecution on account of protected status.

As to her claim that Santhalingam fears future persecution by the Sri Lankan

8

government, although her description of the singling out and torture of Tiger supporters is chilling, the IJ correctly observes that she herself was not singled out, nor is there any compelling evidence to suggest that the government would identify her as a Tiger supporter. It is speculative to assume that any of the videorecorded dances for the Tigers, allegedly used by them as propaganda, would ever be made known to and made the basis of persecution by the Sri Lankan government. The record here does not compel a conclusion contrary to that of the IJ.

III.

For the foregoing reasons, we conclude that the IJ has set forth sufficient reasons for its denial of Santhalingam's petition for refugee status under § 1158(b) and withholding of deportation under § 1231(b)(3)(A). The petition for review is denied. Each side to bear its own costs.

_____
TO THE CLERK:

Please file the foregoing opinion.


                                          /s/ Max Rosenn
                                         Circuit Judge