

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2004

# Calixte v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4258

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Calixte v. Atty Gen USA" (2004). *2004 Decisions.* Paper 873.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/873

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 02-4258

———————

MARIO CALIXTE,
                              Petitioner

v.

John Ashcroft, Attorney General of the
United States

———————

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS
Agency No. A75 969 643

———————

Submitted Under Third Circuit LAR 34.1(a)
January 13, 2004

———————

Before: BARRY, SMITH, and GREENBERG, Circuit Judges

———————

(Opinion Filed: April 6, 2004)

———————

OPINION

———————

BARRY, Circuit Judge

Mario Calixte, a native and citizen of Haiti, petitions for review of a final order of

the Board of Immigration Appeals ("BIA") dismissing his appeal of the decision of the

Immigration Judge ("IJ"). The IJ denied Calixte's application for asylum, withholding of removal, and protection under the Convention Against Torture. We have jurisdiction under 8 U.S.C. § 1252(a), and will deny the petition.

**I.**

Calixte entered the United States on October 20, 1997 as an nonimmigrant visitor for pleasure. In February 1998, he filed an application for asylum with the Immigration and Nationality Service ("INS"). The INS issued a Notice to Appear on July 29, 1998, charging Calixte with removability under INA § 237(a)(1)(B). Calixte conceded removability, but renewed his requests for asylum and restriction on removal.

At the removal hearing and in his affidavit, Calixte alleged the following facts. In the mid-1990s, he worked as an inspector for the Pan American Development Foundation ("PADF") in Haiti, a non-governmental organization funded by the United States. PADF funded projects for farm development and irrigation in Haiti. Calixte's job as an inspector was to verify the attendance of the workers and the payroll. Some of the team chiefs and controllers at the site falsely claimed to be employing more people than they actually were, and kept the money that PADF paid for these non-existent employees. Calixte revealed some of their misdeeds by writing reports to PADF indicating the actual number of employees hired. As a result, in March 1995, one of the team chiefs wanted to ambush him.

Calixte belonged to a political party, called MIDH. He was not an officer, but a

2

"simple member." (Admin. R. at 102). Although he wanted to be the MIDH local secretary for the Carrefour District, he never became such because MIDH was not active. According to Calixte, he talked to people about politics from time to time, but never specifically spoke out about MIDH.

In April 1996, Calixte took over a PADF project located in Port-au-Prince. Johnny Charles, a contractor, introduced Calixte to a controller, Macly. PADF assigned 96 teams of 20 workers each to the project. Later that month, Calixte conducted a survey of the site and did not see 96 teams working. He informed Macly of this, and Macly offered him 10,000 gourdes to keep quiet. Calixte refused the bribe, thereby causing tension between them.

Outside of his job, Calixte and others developed a self-help program for Haitians called PEC. PEC was not a political organization. On May 30, 1996, as Calixte was walking home after attending a PEC meeting, local protesters set fires in the street because the road repair money for their district had been withdrawn. Police officers arrested Calixte and others. Calixte was interrogated by the police and accused of starting the fires. The police released him after four hours.

In June 1996, Calixte visited the United States on a 21-day vacation. Although he was afraid to return to Haiti, he did so because his family and work were there. He resumed his work at PADF and filed a final report which "detailed the problems with nonverification of work, nonverification of workers, and nonverification of payrolls."

3

(Admin. R. at 183). The PADF program ended in 1997, and PADF did not renew its grant. Macly and his friends blamed Calixte for the non-renewal of the PADF contract. Calixte worked as a taxi driver afterwards, and continued his involvement with PEC.

In February 1997, the police searched his home because they had been informed that he was harboring guns. The police confiscated his PADF papers and took him to the police station. He was released after approximately an hour. Late in 1997, he received threats from Macly's friends. As a result, he moved from place to place. In September 1997, some of Macly's friends shot guns into the air near his house and yelled threats directed at him. He did not inform the police because he believed that Macly had connections with them. On one occasion, he saw Macly and the Haitian President walk hand in hand when the President visited the PADF work site.

In a decision dated October 19, 1999, the IJ denied Calixte's application in all respects, finding that (1) he did not present a credible case; (2) the threats by Macly and others did not amount to persecution on account of a specified ground under the statute; and (3) he did not establish the likelihood of future persecution.

Calixte appealed to the BIA. In an order dated October 25, 2002, the BIA dismissed the appeal. The BIA did not make a finding one way or the other as to Calixte's credibility; rather, it found that the threats made against Calixte did not constitute persecution and, in any event, did not constitute persecution based on a statutorily protected ground. The BIA's decision, in its entirety, is as follows:

4

[Calixte] has appealed from the Immigration Judge's decision dated October 19, 1999. However, even assuming that [Calixte] is credible, the record does not support [his] contention that he is eligible for asylum or withholding of removal. [Calixte] claims that he exposed fraudulent criminal behavior in the form of kickbacks on a PADF program in Haiti to aid irrigation and farm development funded by the United States. When he exposed the scheme, [Calixte] claimed that the two beneficiaries of the scheme, named Macly and Johnny Charles, threatened him. The threats received by [Calixte] are not persecution within the meaning of the Act. Matter of V-T-S, 21 I&N Dec. 792 (BIA 1997) (threats resulting from criminal activity such as extortion or kidnaping are not persecution within the meaning of the Act).

[Calixte] further claimed that the threats may have been linked to his membership in the MIDH or PEC political groups. His testimony on this issue falls well short of establishing a causal connection between his limited involvement in these groups and the threats he received from Macly as a result of Macly's criminal kickback scheme. Accordingly, the appeal is dismissed.

Calixte filed a petition for review in this Court. Because the BIA issued its own decision and did not merely defer to the IJ, we review that decision, and not the decision of the IJ. See Xie v. Ashcroft, 359 F.3d 239, 240 (3d Cir. 2004). We must uphold the BIA's decision if it is supported by substantial evidence in the record. Under this standard, the BIA's decision must be sustained "unless the evidence not only supports a contrary conclusion, but compels it." Zubeda v. Ashcroft, 333 F.3d 463, 471 (3d Cir. 2003) (quoting Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001)).

## II.

The Attorney General, in his discretion, may grant asylum to an alien "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42). To establish eligibility for asylum on the basis of past persecution, the applicant must demonstrate: "(1) an incident, or incidents, that rise to the level of persecution; (2) that is 'on account of' one of the statutorily-protected grounds; and (3) is committed by the government or forces the government is either 'unable or unwilling' to control." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003) (citations and internal quotations omitted). If past persecution has not been established, the applicant can show that he has a well-founded fear of persecution on account of one of the enumerated grounds by demonstrating that he has "a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); Lukwago v. Ashcroft, 329 F.3d 157, 167 (3d Cir. 2003).

The BIA determined that Calixte failed to qualify for asylum or withholding of removal because the threats received by him were not "persecution" and that there was no causal connection between those threats and his limited involvement in the MIDH or PEC groups. We will not disturb these findings. The record simply does not compel a conclusion that the threats by Macly and others were so extreme as to constitute

6

persecution or that, even if they were, they were based on Calixte's political opinion or any other protected ground. Rather, the threats resulted from an employment-related dispute that was personal in nature, based on Calixte's refusal to file false inspection reports regarding the number of employees at the project site. An example of the threats follows:

> "You still here? In this country? I will take care of you!" . . . "You stop me from eating? I will stop you from shitting!" referring to revenge against [Calixte] for interfering with their livelihood. . . . "The one you took money from is looking for you now." (Admin. R. at 185).

These statements, as well as others in the record, demonstrate that what mattered to Macly and the other corrupt individuals was not that Calixte had expressed a political opinion, but that his actions cost them money.[1]

We also concur with the BIA's determination that the evidence did not establish a link between the threats made and Calixte's limited involvement with MIDH and PEC. Calixte testified that he was only a "simple member" of MIDH, and that MIDH was not

---

[1]See, in this connection, the country report that is part of the record in this case. The 1998 Department of State's "Profile of Asylum Claims and Country Conditions" states:

> Haiti's extremely poor human rights record stems in part from endemic conditions, such as corruption, poverty, exploitation, and ignorance. The commission of abuses for personal, institutional, and partisan ends was common. The relationship of these abuses to the five protected grounds under the Refugee Convention is often hard to establish. Some applicants may make vague, generic pleas in which the elements of persecution or of political motivation for the persecution are not apparent. In such claims, it is often not possible to identify qualifying conditions related to the five protected grounds. (Admin. R. at 174).

active. The State Department's Report also indicates that "[m]embers of the MIDH, current or former, would appear to have little to fear on returning to Haiti . . . We are aware of no attacks against MIDH supporters since November 1995." (Admin. R. at 164). With regard to PEC, we note that it was not a political organization and was never intended to be one. Rather, PEC was a self-help project consisting of approximately fourteen members. Even assuming, *arguendo*, that PEC's activities were political in nature, the record does not indicate that any "persecution" inflicted upon Calixte was on account of his involvement with PEC. And PADF, of course, was a non-governmental organization, funded by the United States, that administered development grant programs. Calixte's attempt to convert his filing of reports for his PADF job into political acts, while surely valiant, is just as surely too far-fetched.

Calixte contends, however, that his alleged persecution was not only because of his political opinion but also because of his membership in a particular social group. According to him, the social group was based on his "past occupation and his filing negative reports." (Petitioner's Br. at 23). To qualify for asylum based on social group, the applicant must (1) identify a group that constitutes a "particular social group;" (2) establish that he is a member of that group; and (3) show that his persecution is based on that membership. Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993). The BIA has held that a particular social group refers to:

> a group of persons all of whom share a common, immutable characteristic. The shared characteristic might be an innate one such as sex, color, or

kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership. Matter of Acosta, 19 I. & N. Dec. 211, 233 (BIA 1985), overruled in part on other grounds, as stated in Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987).

Calixte has simply not identified a "particular social group" to which he belongs, much less shown that any harm he suffered at the hands of Macly and others was based on his membership in that group. Again, the threats were directed at him individually because of a work-related conflict with corrupt individuals.[2]

Given the above, we will also not disturb the BIA's determination denying Calixte's application for withholding of removal. To qualify for withholding of removal, an applicant must demonstrate that there exists a "clear probability" that he will be persecuted on account of a statutorily protected ground, if removed to the home country. See Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003). If an applicant "fails to establish the well-founded fear of persecution required for a grant of asylum, he or she will, by definition, have failed to establish the clear probability of persecution required for withholding of deportation." Id. at 469-70 (citation omitted).

Finally, Calixte asks us to remand this case because the BIA failed to consider his application for protection under the Convention Against Torture. However, Calixte did not raise this claim before the BIA. Judicial review of final orders of removal is granted "only if . . . the alien has exhausted all administrative remedies available to the alien as of

---

[2]We also find that Calixte has not established that his fear of persecution, if returned to Haiti, is on account of one of the statutorily enumerated grounds.

right." <u>Abdulrahman</u>, 330 F.3d at 595 (internal quotations omitted); <u>see also</u> <u>Xie v. Ashcroft</u>, 359 F.3d 239, 246 n.8 (3d Cir. 2004). Calixte's brief to the BIA indicates that he appealed only the IJ's "decision regarding his applications for asylum and restriction on removal," (Admin. R. at 12), and concludes as follows:

> Therefore, Mr. Calixte asks the Board to:
> 1) Grant him asylum;
> 2) Grant him restriction on removal; or
> 3) Remand for further consideration in light of all the evidence presented by respondent. (Admin. R. at 28).

Because Calixte failed to exhaust his administrative remedies with respect to the claim under the Convention Against Torture, we are without jurisdiction to consider it.

## III.

For the foregoing reasons, we will deny the petition for review.