

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2005

# Perdomo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1621

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Perdomo v. Atty Gen USA" (2005). *2005 Decisions.* Paper 1179.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1179

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1621

GLORIA INES PERDOMO,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Petition for Review from an Order of the
Board of Immigration Appeals
(Board No. A79-318-080)

Submitted under Third Circuit LAR34.1(a)
on March 11, 2005

BEFORE: SCIRICA, *Chief Judge*, ROTH and FUENTES, Circuit Judges,

(Opinion Filed:  May 17, 2005)

———

OPINION

———

ROTH, Circuit Judge:

Gloria Ines Perdomo has petitioned for review of the Order of the Board of Immigration denying her request for asylum, withholding of removal under INA §241(b)(3), and withholding under Article 3 of the Convention Against Torture. Having found that there was substantial evidence to support the Board's decision, we will deny the petition.

## I. FACTS

At her administrative hearing, Perdomo testified as to the following. She is married to Edgar Lizarazo. Prior to coming to the United States, she lived in Bucaramanga, Colombia with her husband and two children. On November 3, 1999, Perdomo's husband went to Aguachica to negotiate a contract for the rental of land. Unfortunately, her husband was kidnaped by paramilitaries sometime prior to his meeting. After hearing the news, Perdomo went to the local authorities who were either unwilling or unable to aid her in the search for her husband. Perdomo received numerous anonymous phone calls subsequent to her husband's kidnaping urging her to leave the country. She did so, entering the United States with a B-2 visitor's visa on May 11, 2000, and subsequently filed an application for asylum and withholding of removal on April 17,

2

2001. The case was referred to the United States Immigration Court and the immigration judge heard Perdomo's case on February 19, 2002.

Following Perdomo's testimony, the Immigration Judge (IJ) denied Perdomo's requests for asylum, withholding of removal, and protection under the Convention Against Torture. Central to the judge's finding was the fact that despite the persistent political upheaval in Colombia, Perdomo herself had never been subject to past persecution, nor was it likely that she would be subject to future persecution if forced to return to her native country. Furthermore, the IJ rejected Perdomo's claim under the Convention Against Torture because she made no claim that the government, or someone acting with the acquiescence of the government, will harm her if she returns to Colombia.

After a timely appeal, the Board of Immigration Appeals dismissed Perdomo's appeal, finding that she did not meet "the burden of proving eligibility for asylum, withholding of removal, or relief under the Convention Against Torture." Furthermore, the Board rejected Perdomo's claim that the immigration judge demonstrated bias in her hearing.

## II. STANDARD OF REVIEW AND JURISDICTION

This Court has jurisdiction of Perdomo's appeal pursuant to § 242(a) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252(a) to review timely filed petitions for review of final orders of the Board. The record indicates that Perdomo's appeal was timely under 8 U.S.C. § 1252(b).

This court has plenary review when reviewing constitutional challenges to immigration procedures. *Dia v. Ashcroft*, 353 F.3d 228, 238 (3d Cir. 2003) (*en banc*). Accordingly, the Court reviews the decision under the substantial evidence test. *Dia v. Ashcroft*, 353 F.3d 228, 238 (3d Cir. 2003) (*en banc*) *Id.* [1]

Under the substantial evidence test, the Court must ask whether " the determination is supported by evidence that a reasonable mind would find adequate." *Id.* at 249. To reverse the Board's rejection of a claim for asylum or withholding of removal, the Court must conclude that "no reasonable fact finder could make [the Board's] finding on the administrative record." *Id.*

### III. DISCUSSION

### A.      Perdomo Failed to Establish Membership in a Particular Social Group

Under this court's longstanding interpretation, persecution on account of membership in a particular social group means "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic." *Matter of Acosta*, 19 I&N. Dec. 211 (BIA 1985), *modified on other grounds*, *Matter of Mogharrabi*, 19 I & N Dec. 439 (BIA 1987). While this

---

[1]The government contends that Perdomo has waived any claim that the BIA abused its discretion in denying her motion to reconsider because she limited her arguments in her brief to a discussion of the IJ's opinion. We decline, however, to find waiver as we read Perdomo's brief as sufficiently preserving the question of whether the BIA abused its discretion by failing to reconsider its previous decision alleged to be factually and/or legally erroneous.

determination is made on a case-by-case basis, our analysis is guided by several factors. Most important, the person seeking relief must demonstrate that "whatever the common characteristic that defines the group, it must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id.* at 233.

Our precedent clearly illustrates that no matter the factual nuances evident in each case, one consistent factor leading to a finding of membership in a particular social group is that the members of the group itself, and not their relatives, are the ones facing persecution. *See Lukwago v. Ashcroft*, 329 F.3d 157, 178-79 (3d Cir. 2003) (holding group of former child soldiers escaping from involuntary servitude constitutes "particular social group"); *Amanfi v. Ashcroft*, 328 F.3d 719, 727-30 (3d Cir. 2003) (imputed status as homosexual cognizable theory of social group membership); *Fatin v. INS*, 12 F.3d 1233, 1241 (3d Cir. 1993) (group of Iranian women effected by country's gender laws constitutes "particular social group"). What distinguishes the instant case from those discussed above is Perdomo's inability to articulate membership in a particular social group based on actions specifically taken against her. Rather, she seeks relief under the "particular social group" doctrine based on her husband's kidnaping. While we sympathize with this tragic event, we nevertheless conclude that Perdomo has not demonstrated a well-founded fear of persecution due to membership in a particular social group.

**B.    No Well-Founded Fear of Future Persecution if Returned to Colombia**

The IJ's finding that Perdomo did not have a well-founded fear of future persecution if returned to Colombia is supported by substantial evidence. While we recognize that Perdomo's native Colombia is in a state of civil war, such political unrest does not equate to a fear of future persecution. As we stated in *Fatin v. INS*, "Persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." 12 F.3d at 1240. In order to demonstrate persecution, the individual must show to a reasonable degree of certainty that "she would be singled out or treated differently from others in her country because she possessed a characteristic a persecutor sought to punish." *Matter of Sanchez and Escobar*, 19 I & N Dec. at 284. At her administrative hearing, Perdomo failed to articulate why she was a target of any kind of individualized persecution, pointing only to the civil unrest in her country and the kidnaping of her husband. As the latter has already been discussed, we find that the IJ's conclusion that "there is no reason to believe [Perdomo] would be singled out on account of race, religion, nationality, membership in a particular social group, or political opinion in the future" is supported by substantial evidence.

**C.    Administrative Proceedings Comported with Due Process**

Perdomo's claim that the IJ prejudged her claims lacks merit. At the administrative hearing, the IJ stated, "It doesn't look like much of a claim if you read this asylum application. I wonder what we're even doing here. I wonder if this claim gets any better

6

when I hear it because as it's written, it doesn't even begin to approach a grantable claim of asylum." While we reserve comment on the IJ's statement, the record demonstrates that Perdomo had a full and fair opportunity to present her case to the court, including all available evidence and witnesses. At no time was she denied the opportunity to a full and fair hearing on the merits. To the contrary, the IJ's remark set out for the parties where he found weakness in the claim. Accordingly, we conclude that the IJ was merely giving his preliminary comments after his initial assessment of the case, and at no time failed to afford Perdomo a full and fair hearing on the merits.

## CONCLUSION

For the foregoing reasons, the petition for review is denied.