[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 9, 2006
THOMAS K. KAHN
CLERK

No. 05-15389
Non-Argument Calendar

_____

Agency Nos. A22-369-159
and A95-548-296

HARRY MARQUEZ,
MARIA FERNANDA MARQUEZ,
JUAN PABLO MARQUEZ,
MELBA LUCIA RAMIREZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(May 9, 2006)**

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Harry Marquez, on behalf of himself and his wife, Melba Ramirez, and his two children, Maria Marquez and Juan Pablo Marquez, petitions this court for review of the Board of Immigration Appeals's affirmance of the Immigration Judge's order of removability. Substantial evidence supports the Board's decision. Accordingly, we deny the petition.

## I. Background

Marquez, a native and citizen of Colombia, entered the United States in May 2001 on a year-long visa. He remained in the United States without permission after his visa expired, and the INS issued a Notice to Appear charging him with removability under INA § 237(a)(1)(B).[1] Marquez's wife and two children entered the United States in April 2001 and overstayed their visas. They also received Notices to Appear. Thereafter, Marquez applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), Pub. L. 105-277, § 2242, 112 Stat. 2681-761, 2681-822 (1998), on behalf of himself, his wife, and his children, claiming that he had been persecuted based on his political opinion and that he feared persecution should he return to Colombia.

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002, Pub. L. No. 107-296, Stat. 2125. The Act created a new Department of Homeland Security, abolished the INS, and transferred INS's functions to the new department.

At a hearing before an Immigration Judge ("IJ"), Marquez conceded removability. He then testified: Marquez lived with his wife and children in Barranquilla, Colombia, where he worked as a chemist and engineer. In 1997, he became involved in political events supporting the Political Group of Liberal Solidarity Party. From mid-October 2000 to late November 2000, Marquez received threatening phone calls from a man who identified himself as a member of FARC.[2] He testified that the callers told him to stop supporting the candidates from his political party. In his application, he explained the calls' contents further, stating that the caller criticized how he treated his workers, knew important details about his business, and threatened his life if he did not stop his political activities.

In the afternoon of November 21, 2000, two men confronted Marquez outside his office. One man was armed and said, "We warned you and you did not pay attention." At that time, several of Marquez's employees approached the scene. The two men immediately left in a waiting taxi. Marquez reported the incident and the threatening calls to his political party's leader, Miguel Salamon Calvano, who told him to contact the police. Marquez never informed the police. In conversations with other members of his political party, Marquez learned that

---

[2] The Revolutionary Armed Forces of Colombia ("FARC") is a left-wing rebel group with between 12,000 and 18,000 members, which supports a well-funded guerilla army that targets both civilians and the Colombian government.

none of them had received threats. Marquez testified that he was nervous following the November 21 incident, prompting him to move his family to his wife's aunt's house in Medellin. In his application, Marquez stated that he received a telephone call while still in Barranquilla at end of 2000, in which the caller referred to him as an "abuser of workers" and said that "we hope that with that warning you will pay attention." He also stated that his sisters continue to receive telephone calls from unidentified individuals asking his whereabouts.

According to Marquez, he was in hiding in Medellin but never had any problems. Marquez received a visa in 1997, and he stated that he remained in Medellin in hopes of saving his business, which his sisters ran in his absence, and returning to Barranquilla. Marquez never explained why he decided to leave Medellin, but he arrived in the United States on May 2001 on a year-long visa.

Marquez explained that some family members suffered from the unstable climate in Colombia: a cousin has not been seen since he was kidnapped by FARC members; another cousin was kidnapped by ELN members[3] but was released after a few months; and his brother-in-law was kidnapped and killed, but Marquez could not say who was responsible.

In support of his application, Marquez provided a letter from Calvano

---

[3] The National Liberation Army ("ELN"), which is a rival of FARC, is a left-wing rebel group with about 4000 members.

4

verifying his political party membership. Neither Marquez nor the government submitted country reports for Colombia.

The IJ denied relief, finding that Marquez's testimony was not credible. The IJ noted that Marquez failed to show how he was singled out based on his political opinion and that his explanation for waiting to use his visa was unresponsive. The IJ also noted that Marquez had relocated within the country without incident. The IJ expressed concern about the lack of corroborating evidence, particularly the slim evidence that FARC was involved and Marquez's failure to obtain letters from his co-workers or Calvano stating that they witnessed or discussed with Marquez the November 21 incident. In light of these concerns, the IJ concluded that Marquez failed to meet his burden to establish his eligibility for asylum, withholding of removal, or relief under CAT.

Marquez appealed to the Board of Immigration Appeals ("BIA"). He referred to corroborating evidence from the country reports, but he did not submit them as part of the record. The BIA affirmed, explaining that, even assuming Marquez's testimony was credible, he had failed to show that he could not relocate within Colombia or that FARC had any current interest in him. The BIA also concluded that Marquez had not established past torture or that future torture was more likely than not. Accordingly, the BIA dismissed the appeal.

## II. Standard of Review

When the BIA issues a decision, this court reviews that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). We review legal determinations de novo and factual determinations, including credibility determinations, under the substantial evidence test. "Under the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1255 (11th Cir. 2006) (citation omitted). "A finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify reversal of the administrative findings." Id. (citation omitted).

## III. Discussion

The Attorney General or the Secretary of the Department of Homeland Security has the discretion to grant asylum if an alien meets the INA's definition of "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines "refugee":

> [A]ny person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . political opinion . . . .

6

8 U.S.C. § 1101(a)(42)(A) & (B). Persecution on account of political opinion refers to the victim's political opinion. Ruiz, 440 F.3d at 1257. The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To meet this burden, the alien must, with specific and credible evidence, establish either: (1) past persecution on account of a statutorily listed factor; or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. Id. at 1287; 8 C.F.R. § 208.13(a), (b).

The burden of proof for persecution also rests with the alien, but the INA does not expressly define "persecution" for purposes of qualifying as a "refugee." INA § 101(a)(42), 8 U.S.C. § 1101(a)(42). We have noted, however, that "persecution is an extreme concept," requiring "more than a few isolated incidents of verbal harassment or intimidation," and that "mere harassment does not amount to persecution." Gonzalez v. Reno, 212 F.3d 1338, 1355 (11th Cir. 2000) (citations omitted). The alien's own testimony may in some cases be the only evidence available, and it can suffice when the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear. Matter of Mogharrabi, 19 I. & N. Dec. 439, 445-46 (BIA 1987). If the alien establishes past persecution, the burden shifts to the government to prove by a preponderance of the evidence that (1) "[t]here has been a fundamental change in

7

circumstances such that the [alien] no longer has a well-founded fear of persecution [or (2) the alien] could avoid future persecution by relocating to another part of the [alien's] country." 8 C.F.R. § 208.13(b)(1)(i), (ii).

If the petitioner fails to establish past persecution, he must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257; Al Najjar, 257 F.3d at 1289. The subjective component can be proved "by the applicant's credible testimony that he or she genuinely fears persecution," and the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Ruiz, 440 F.3d at 1257.

Here, Marquez failed to present any supporting evidence to establish his claim of past persecution based on political opinion. Even though an alien's testimony alone can establish past persecution, Marquez's testimony does not show that he suffered past persecution. The telephone calls that allegedly came from FARC guerillas were merely "a few isolated incidents of verbal harassment." Gonzalez, 212 F.3d at 1355. Even assuming that the two men who threatened Marquez at gunpoint did so because of his political opinion, the single incident and telephonic threats do not establish past persecution. Sepulveda v. U.S. Attorney Gen., 401 F.3d 1226, 1231 (11th Cir. 2005). Furthermore, the incidents involving

his family members do not establish that *Marquez* suffered past persecution based on his political opinion.

Because Marquez failed to establish past persecution, the burden remains with him to establish a well-founded fear of future persecution by showing either: (1) a reasonable possibility of personal persecution that cannot be avoided by relocating within the subject country; or (2) a pattern or practice in the subject country of persecuting members of a statutorily defined group of which [he] is a member." 8 C.F.R. § 208.13(b)(1), (2).

Marquez's own testimony destroys his assertion that he can establish a well-founded fear of future persecution. First, Marquez testified that the problems ceased once he relocated within Colombia. Even though we noted in Arboleda that FARC's presence is country-wide, that case does not control because unlike there, Marquez did not establish past persecution and testified that the problems ceased after he relocated. Arboleda v. U.S. Attorney Gen., 434 F.3d 1220, 1225-26 (11th Cir. 2006). Second, according to Marquez, other members of his political party did not experience threats or harassment based on their political opinion. Given these facts, Marquez's fear about returning to Colombia is not objectively reasonable. Therefore, he has failed to established a well-founded fear of future persecution.

We also reject Marquez's challenges to the IJ's bias at the hearing and the

9

denial of his claim for relief under CAT.  By failing to raise those claims for the BIA, he has not exhausted the claims.  <u>Fernandez-Bernal v. U.S. Attorney Gen.</u>, 257 F.3d 1304, 1317 n.13 (11th Cir. 2001).  Additionally, Marquez has abandoned his claim for withholding of removal because he did not raise that claim before this court.  <u>Ruiz</u>, 440 F.3d at 1256 n.6.

Petition DENIED.