[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14314
Non-Argument Calendar

_____

BIA No. A96-096-205

JUAN ANSELMO AMAYA GOMEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(February 13, 2007)**

Before BLACK, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Juan Anselmo Amaya Gomez petitions this court for review of the decision

by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's

("IJ") order of removal and denial of: asylum, withholding of removal, and relief

under the United Nations Convention Against Torture ("CAT").[1] For the reasons

that follow, we affirm.

## I. Background

Gomez, a native and citizen of Columbia, entered the United States in March

of 2002 on an immigration visa, and he remained beyond the expiration period.

The INS[2] issued a Notice to Appear, charging him with removability under INA

§ 237(a)(1)(B) and 8 U.S.C. § 1227(a)(1)(B). Gomez applied for asylum,

withholding of removal, and relief under the CAT, alleging that he had suffered

persecution from the Revolutionary Armed Forces of Columbia ("FARC") based

on his political opinions.

At a hearing before an IJ, Gomez conceded removability, but argued that he

had been persecuted based on his political opinion and his status as a pilot

recruited by FARC. Specifically, Gomez testified that he had worked as a pilot for

---

[1] Gomez does not raise any arguments in his brief regarding the IJ's denial of CAT relief. Thus, he has abandoned this issue on appeal. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n. 2 (11th Cir. 2005).

[2] In 2002, President Bush signed into law the Homeland Security Act, which created a new Department of Homeland Security and abolished the INS, transferring its responsibilities to the new department. See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. Because this case initiated before the transfer, this opinion refers to the INS in the interest of clarity.

charter flights in Colombia and as a taxi driver. According to Gomez, in November of 1999, men identifying themselves as members of FARC approached him and asked him to fly people, food, and possibly drugs on behalf of FARC. Gomez claimed that the men offered him money and told him to think about collaborating with FARC. Gomez refused. The next month, according to Gomez, the men approached him again, but this time they were more threatening and Gomez became afraid. In January of 2000, a FARC member telephoned Gomez at his home and left a message with Gomez's daughter. Gomez testified that he and his family became more frightened because the call meant that FARC knew who he was and where he lived. As a result, Gomez moved his family to the home of his in-laws for several months. Gomez himself fled to the United States, where he remained for six months before returning to Colombia.

When Gomez returned to Colombia, he believed that he and his family were safe from FARC because they had not heard from FARC since he had left Colombia. In March of 2002, however, a jeep occupied by FARC members rammed into Gomez's taxi, and the occupants threatened to harm Gomez and his family if he refused to cooperate with FARC. Shortly thereafter, in fear of persecution by FARC, Gomez returned to the United States. His family, however,

remained in Colombia.[3]  Although Gomez's wife remained frightened, at the time

of the hearing, FARC had done nothing to harm Gomez's family. In addition to his

testimony, Gomez submitted a police report dated 2003 about the threats he had

allegedly received from FARC.

The IJ denied relief, finding that Gomez's testimony was credible, but that

the events did not rise to the level of past persecution.  The IJ further concluded

that there was no evidence of a well-founded fear of future persecution given that

Gomez's encounters with FARC consisted of two meetings, one phone call, and an

auto accident.  The IJ also concluded that recruitment by a guerilla organization

was not persecution on account of a protected ground.  In addition, the IJ noted

that:  Gomez had been in the United States in 2000 after the initial threats and did

not seek asylum, no one in Gomez's family had been harmed, and his daughter

came to the United States to visit her father and not because she feared FARC.

Gomez appealed to the BIA, which adopted and affirmed the IJ's denial of

relief.  The BIA concluded that because the alleged persecution was motivated by

monetary gain (that is, use of Gomez's services as a pilot), there was no nexus

between the alleged persecution and any protected grounds.  The BIA also noted

that Gomez's family had remained in Colombia without incident and that Gomez

---

[3] Gomez's daughter, who was twenty-one years old, was at the hearing; she had come to the United States on a visa to visit her father.

had not sought asylum when came to the United States in 2000 after the initial threats.

## II. Discussion

On appeal, Gomez challenges the denial of relief on the grounds that his three encounters with FARC members were enough to establish past persecution and a well-founded fear of future persecution on account of his political opinion and membership in a social group. According to Gomez, the IJ failed to consider the reasonableness of the motivation, or the record as a whole.

This court reviews the BIA's decision except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent that the BIA's or IJ's decision was based on a legal determination, this court reviews the decision de novo. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). The IJ's factual determinations are reviewed under the substantial evidence test, and this court "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1283-84 (citation and internal quotation marks omitted). Additionally, "[u]nder the substantial evidence test, [this court reviews] the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Ruiz, 440 F.3d at 1255 (citing Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th

5

Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005)). Thus, "a finding of fact will be reversed only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. (citation omitted).

## A. Asylum

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). The INA defines a refugee as

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of . . . membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A) & (B). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284. To meet this burden, the applicant must establish, with specific and credible evidence, (1) past persecution on account of a statutorily listed factor, *or* (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum has suffered past persecution or has a

6

well-founded fear of future persecution." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1239 (11th Cir. 2006).

If the asylum applicant establishes past persecution, he is presumed to have a well-founded fear of future persecution unless the government can rebut the presumption. D-Muhumed, 388 F.3d at 818 (citing 8 C.F.R. § 208.13(b)(1)(i), (ii)). If he cannot show past persecution, then he must demonstrate a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. Ruiz, 440 F.3d at 1257; Al Najjar, 257 F.3d at 1289. The subjective component can be established "by the applicant's credible testimony that he or she genuinely fears persecution," while the objective component "can be fulfilled either by establishing past persecution or that he or she has a good reason to fear future persecution." Ruiz, 440 F.3d at 1257.

Here, we conclude that the IJ's decision is supported by substantial evidence as (1) Gomez failed to establish that he suffered past persecution or that he had a well-founded fear of future persecution, and (2) Gomez failed to show that any alleged persecution was "on account of" a protected ground.

*1. Persecution*

As evidence of persecution, Gomez identified two meetings with, one phone call from, and an auto accident involving one or more members of FARC. But Gomez failed to present any evidence that either he or his family were actually

harmed by members of FARC. As this court has explained, "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." Sepulveda v. U.S. Att'y Gen, 401 F.3d 1226, 1231 (11th Cir. 2005) (citation and internal quotation marks omitted). In light of this standard, we conclude that Gomez has failed to establish that his (and his family's) past interactions with FARC rise to the level of persecution.

We also conclude that Gomez has not shown a well-founded fear of future persecution that is both subjectively genuine and objectively reasonable. See Ruiz, 440 F.3d at 1257; Al Najjar, 257 F.3d at 1289. Even assuming, without deciding, that Gomez satisfied the subjective requirement, in our view, he cannot show that his fear was objectively reasonable given that: Gomez did not apply for asylum during his first stay in the United States following the initial threats, and his family has remained in Colombia without incident. Accordingly, we hold that the IJ and BIA properly concluded that Gomez failed to establish a well-founded fear of future persecution.

2. *"On Account of"*

Even if Gomez could show that he had been persecuted, there is no evidence to support a conclusion that such persecution was "on account of" his political opinion or membership in a particular social group.

8

Gomez has not shown any connection between any alleged imputed opinion and the incidents with FARC. To the contrary, it appears that FARC was motivated by monetary gain via the use of Gomez's services as a pilot and not by any perceived or actual political opinion.

Likewise, there is no evidence that the alleged threats were "on account of" Gomez's membership in a particular social group. According to the BIA, persons have "membership in a particular social group" if they "hold an immutable characteristic or common trait such as sex, color, kinship, or, in some cases, shared past experiences . . . ." Matter of Acosta, 19 I.&N. Dec. 211, 233 (BIA 1985), overruled on other grounds, In Re Mogharrabi, 19 I.&N. Dec. 439, 441 (BIA 1987). As the BIA has explained, the "common characteristic that defines the group . . . must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." Id. "The risk of persecution alone does not create a particular social group within the meaning of the INA." Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196 (11th Cir. 2006). Thus, we conclude that Gomez's status as a pilot recruited by FARC does not constitute "membership in a particular social group" within the meaning of the INA.

## B. Withholding Removal

Because Gomez cannot establish eligibility for asylum relief, he therefore

cannot meet the more stringent burden for withholding removal.

### III. Conclusion

We conclude that the BIA's and IJ's denial of asylum and withholding of removal are supported by substantial evidence. Accordingly, we **DENY** Gomez's petition.