

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-20-2009

# Ilunga v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1521

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Ilunga v. Atty Gen USA" (2009). *2009 Decisions*. Paper 1717.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1717

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 08-1521

BIBICHE KIKWANZI ILUNGA,
                                                  Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                  Respondent

On Petition for Review of a Decision of the
Board of Immigration Appeals
BIA No. A98-730-753
(U.S. Immigration Judge:  Honorable R. K. Malloy)

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 18, 2009
Before: SCIRICA, Chief Judge, CHAGARES and ALDISERT, Circuit Judges

(Filed: March 20, 2009)

OPINION OF THE COURT

PER CURIAM.

     Petitioner Bibiche Kikwanzi Ilunga seeks review of a final decision by the Board

of Immigration Appeals ("BIA") issued on January 24, 2008.  For the reasons that follow,

we will dismiss in part and deny in part the petition for review.

## I. Background

Ilunga is a native and citizen of the Democratic Republic of the Congo. She claims that she suffered persecution and torture – including, rape, abuse, and forced enslavement to a military general – because of her father's political affiliation. Ilunga was served with a notice to appear. She conceded removability, and on February 18, 2005, with the assistance of counsel, applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

After a hearing at which Ilunga appeared as the sole witness, the Immigration Judge ("IJ") denied Ilunga's application, ordered her removal, and granted voluntary departure. The IJ held that Ilunga failed to show that she applied for asylum within one year of her arrival in the United States, and therefore denied her asylum application as untimely. The IJ also held that, largely because of her failure to present corroborating evidence, Ilunga failed to meet her burden of establishing eligibility for asylum, withholding of removal, or protection under the CAT. Ilunga appealed to the BIA.

In a January 24, 2008, decision, the BIA concluded that Ilunga failed to show that the IJ's findings of fact were clearly erroneous, and upheld the IJ's decision that Ilunga untimely filed her asylum application and failed to meet her burden of establishing eligibility for relief. Adopting the reasons discussed by the IJ, the BIA dismissed Ilunga's appeal. This timely petition for review followed.

## II.  Analysis

We generally review only final orders of the BIA.  See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005); Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir. 2001). However, where the BIA adopts the  IJ's reasoning and discusses some of the bases of the IJ's decision, we also review the order of the IJ.  Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

### A.  Asylum

An asylum applicant must demonstrate by clear and convincing evidence that her application was filed within one year after her arrival in the United States.  INA § 208(a)(2)(B) [8 U.S.C. § 1158(a)(2)(B)].  However, an otherwise untimely asylum application may be considered "if the alien demonstrates . . . extraordinary circumstances relating to the delay in filing an application within the [one year] period. . . ."  INA § 208(a)(2)(D) [8 U.S.C. § 1158(a)(2)(D)].

Here, the BIA upheld the IJ's conclusion that Ilunga failed to demonstrate through clear and convincing evidence that she filed her asylum application within the one-year statutory period.  Ilunga does not dispute the conclusion that she failed to show that her application was timely filed.  However, she argues that the untimeliness should be excused because she suffered from post-traumatic stress disorder as reflected in an expert affidavit, and also because she "was at the mercy of the legal guidance of a notario."

Absent a constitutional claim or question of law, we lack jurisdiction to review a determination regarding the timeliness of an asylum application or the existence of changed or extraordinary circumstances justifying late filing. INA § 208(a)(2), (3) [8 U.S.C. § 1158(a)(2), (3)]; INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)]; Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006); Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003). Ilunga does not raise a constitutional claim or question of law relating to the timeliness determination. Accordingly, we will dismiss Ilunga's petition for review to the extent it presents a challenge to the denial of her asylum application.[1]

## B. Withholding of Removal

To qualify for withholding of removal pursuant to INA § 241(b)(3)(A) [8 U.S.C. § 1231(b)(3)(A)], Ilunga bore the burden of demonstrating a "clear probability" of future persecution – that "it is more likely than not" that she would be persecuted if she were to return to the Congo. See INS v. Cardoza-Fonseca, 480 U.S. 421, 449-50 (1987). In concluding that Ilunga failed to meet her burden of proof, the BIA upheld the IJ's finding that Ilunga was not credible because of inconsistencies concerning the nature and circumstances of events prompting her to come to the United States. We review adverse credibility determinations for substantial evidence. Chen v. Ashcroft, 376 F.3d 215,

---

[1] In addition, Ilunga did not present to the BIA her argument that her untimeliness should be excused due to the poor legal guidance of a "notario." We lack jurisdiction to address arguments in a petition for review that were not exhausted before the BIA. INA § 242(d)(1) [8 U.S.C. § 1252(d)(1)]; see also Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

4

221-22 (3d Cir. 2004). We must uphold the adverse credibility determination unless the evidence of Ilunga's credibility is so strong "that in a civil trial [s]he would be entitled to judgment on the credibility issue as a matter of law." Chen, 376 F.3d at 222.

We conclude that the adverse credibility determination rests upon substantial evidence. The IJ provided specific, cogent reasons for the determination, including multiple conflicts and inconsistencies in Ilunga's evidence concerning her experiences in and departure from the Congo[2] and her arrival in the United States.[3] Many of these conflicts go to the "heart" of Ilunga's claims. See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004).

---

[2] For instance, Ilunga testified that she suffered persecution beginning when her family was attacked in July 1997 on account of her father's political beliefs, and that, at that time, Ilunga was abducted and forced to become the mistress of a general, and two of her sisters were murdered. However, the IJ noted that, although Ilunga sought relief based on her father's political beliefs, she did not testify that the July 1997 violence occurred on account of her father's politics, or that her father was even present during the attack. The IJ also noted that the documents Ilunga submitted reflected that the attack took place in either February of 1996 or February of 1997, not in July 1997. Third, the IJ observed that Ilunga's affidavit indicated that she attended high school until 1998, which conflicted with her testimony that she was abducted in July 1997.

[3] For instance, the IJ noted that although Ilunga testified that she could not recall the year in which she arrived in the United States, her application stated specifically that she arrived on February 4, 2004. In addition, Ilunga testified that she was able to escape from the general after arriving in the United States because his bodyguards did not accompany them. However, her affidavit stated that she arrived in the United States accompanied by the general and his bodyguards. Next, Ilunga testified that she escaped from the general with the assistance of two Congolese women whom she had met at the hotel where she was being held, and that these women introduced her several days later to the "asylum preparer." However, this conflicted with a letter submitted by the "asylum preparer," indicating that he assisted Ilunga in her escape.

5

The IJ postulated that many of the inconsistencies and conflicts between Ilunga's testimony and her documentary evidence arose because Ilunga had been the "victim" of an "asylum preparer," who had fabricated her application. Ilunga argues that the fabricated documents must be ignored in assessing her credibility. Relying on the BIA's decision in Matter of Mogharrabi, 19 I&N Dec. 439, 445 (BIA 1987) (holding that "the lack of [corroborating] evidence will not necessarily be fatal to the application"), she contends that her testimony alone was sufficient to meet her burden of proof.

In Mogharrabi, the BIA recognized that applicants may face difficulties in obtaining corroborating evidence, and "[a]lthough every effort should be made to obtain such evidence," its absence does not necessarily prohibit relief. Id. However, Mogharrabi does not speak to a situation where, as here, the applicant did submit evidence, but the evidence was fabricated and thus undermined, rather than corroborated, the claim. Moreover, Mogharrabi recognized that unsupported testimony need not be accepted as true, particularly where, as here, inconsistencies are apparent. Id. at 446.

Neither the BIA nor the IJ concluded that Ilunga's documentary submissions must be ignored or excused. Ilunga did not withdraw her application or evidence, and she offers no support for the contention that it was error to consider her submissions in reaching conclusions concerning the credibility of her claims. Indeed, although the IJ concluded that Ilunga may have testified credibly in some (unspecified) respects, the IJ ultimately found that "[i]t truly is a mystery what actually happened to the respondent."

6

To clarify this "mystery," the IJ desired corroboration of Ilunga's claims.  Ilunga argues that the IJ applied a "legally incorrect bright line test" that unnecessarily demanded corroboration where none was required.  We disagree.  A failure to provide corroborating evidence may undermine an applicant's case where: (1) the IJ identifies facts for which it is reasonable to expect corroboration; (2) the applicant fails to corroborate; and (3) the applicant fails to adequately explain the failure to corroborate.  Chukwu v. Att'y Gen., 484 F.3d 185, 191-92 (3d Cir. 2007).  Indeed, even a credible applicant may be asked to provide evidence corroborating the specifics of her testimony if it is reasonable to expect the applicant to do so.  See Abdulai, 239 F.3d at 554.

We conclude that the request for corroboration was reasonable, particularly given the conflicting evidence undermining Ilunga's credibility and the fraudulent documents submitted in support of her application.  Ilunga failed to present any witnesses or statements to support her claims, and when questioned about the lack of corroborating evidence, did not provide convincing answers explaining its absence.[4]  See Chukwu, 484

_____

[4] The IJ asked why Ilunga did not present witnesses to corroborate her testimony, such as the two Congolese women who allegedly helped her escape the general, the coworkers who allegedly gave her a job, and the individual who prepared her asylum application.  Although Ilunga argued that at least some of these individuals refused to testify because they are illegal aliens, the IJ noted that this did not adequately explain their failure to submit written statements.  The IJ also asked why Ilunga did not present statements from her family members in the Congo to corroborate her claims of past persecution.  Ilunga responded that "the country is still not safe."  However, Ilunga also testified that her father, mother, daughter, and siblings all continue to safely reside in the Congo.  The IJ observed that this conflicts with Ilunga's claim that she faces danger on account of her

(continued...)

7

F.3d at 191-92.

### III. Conclusion

For the foregoing reasons, we will dismiss the petition for review to the extent it presents a challenge to the determination that the asylum application was untimely. We will deny the petition for review in all other respects.

---

[4](...continued)
father's political beliefs. Indeed, Ilunga testified that her family members were able to safely contact, meet with, and retrieve her daughter from the custody of the militants who allegedly posed the threat of persecution. Evidence that family members continue to reside in the country where the persecution allegedly occurred undermines the claim of a reasonable fear of future persecution. Toure v. Att'y Gen., 443 F.3d 310, 319 (3d Cir. 2006); Lie v. Ashcroft, 396 F.3d 530, 537 (3d Cir. 2005).