[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10097
Non-Argument Calendar
_____

Agency No. A079-102-057

AFERDITA FEJZA, et al.,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 4, 2012)

Before TJOFLAT, JORDAN and KRAVITCH, Circuit Judges.

PER CURIAM:

Aferdita Fejza and Sara Fejza, an Albanian mother and child, petition for

review of the Board of Immigration Appeals' final order affirming the immigration

judge's denial of their applications for asylum and for withholding of removal under the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(42), 1158(b)(1), 1231(b)(3)(A).[1] The BIA concluded that Ms. Fejza failed to meet her burden of proof for asylum and withholding of removal because she failed to establish her membership in a particular social group, and even if she did, she failed to establish a nexus between any persecution she may have faced and any of the enumerated grounds in the Act. *See* 8 U.S.C. § 1101(a)(42) ("well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion"). Finding no reversible error, we deny the petition.[2]

# I

On July 29, 2004, the government served Ms. Fejza with a notice to appear. Ms. Fejza, through counsel, admitted the allegations in the NTA and conceded her removability on April 20, 2005. After conceding her removability, Ms. Fejza filed an application for asylum, withholding of removal, and CAT relief, which she amended

---

[1] The Fejzas failed to make any argument before the BIA challenging the IJ's denial of their claim for withholding of removal under the United Nations Convention Against Torture, 8 C.F.R. § 1208.16,  so we lack jurisdiction to consider any such challenge now. *See Sundar v. INS*, 328 F.3d 1320, 1323 (11th Cir. 2003) ("[W]e lack jurisdiction to consider claims that have not been raised before the BIA."). The Fejzas also abandoned any argument regarding their CAT claim by failing to argue it in their brief. *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1145 (11th Cir. 2010) ("Generally, when an appellant fails to offer argument on an issue, that issue is deemed abandoned.").

[2] Because Aferdita Fejza is the lead petitioner and her daughter Sara, is a derivative asylum applicant in this case, we will refer to Aferdita as Ms. Fejza.

on July 31, 2007. In her application, as amended, Ms. Fejza indicated that she was seeking relief based on her religion, political opinion, and membership in a particular social group.

Ms. Fejza alleges that when she was 15 years old her father arranged for her to marry Vesnik Kada, a 30-year old man from a neighboring village. According to Ms. Fejza, she was badly beaten by her father when she refused to marry Mr. Kada. Later, when she was 17, Ms. Fejza fled to a neighboring village and married her boyfriend, Fitim Fejza. After her marriage, Ms. Fejza began to receive death threats from Mr. Kada and his family. Ms. Fejza also received threats from her own family and was disowned by her parents. She was disowned because if her parents accepted her marriage they would have entered into a blood feud with the Kada family. Ms. Fejza also testified that in February of 1999 Mr. Kada attempted to kill her and her husband by firing several shots at them while they were at a bus stop. Ms. Fejza continued to receive threats from Mr. Kada and his family, and in March of 2001 she fled with her daughter to the United States.[3]

Following a hearing, the IJ did not find Ms. Fejza credible, denied her applications for relief, and ordered her removed to Albania. On May 1, 2008, the BIA

---

[3] Ms. Fejza's husband, Mr. Fejza, testified at Ms. Fejza's hearing that he had applied for asylum but that he was appealing to the BIA because his application had been denied.

affirmed the IJ's rulings. Ms. Fejza filed a motion to reopen with the BIA on April 29, 2009. The motion to reopen was granted on October 23, 2009, and the BIA remanded Ms. Fejza's case to the IJ. After holding another hearing the IJ once again found Ms. Fejza to not be credible. The IJ also found that Ms. Fejza failed to show a nexus between the purported harm and a protected ground.

Ms. Fejza appealed to the BIA. The BIA dismissed Ms. Fejza's appeal on December 9, 2011. The BIA determined that, even if it assumed that Ms. Fejza was credible, she had failed to demonstrate that she suffered past persecution or held a well-founded fear of future persecution based on a protected ground. Specifically, the BIA determined that Ms. Fejza's proposed social group of "women in Albania who refuse their families' arranged marriages" did not constitute a "particular social group." Ms. Fejza now appeals.

## II

Because the BIA issued its own opinion and did not expressly adopt the IJ's opinion or reasoning, we review only the BIA opinion. *See Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011) ("We review only the BIA's decision except to the extent the BIA expressly adopts the IJ's opinion or reasoning.").[4] We review

---

[4] To the extent that Ms. Fejza argues that the IJ erred, we consider these arguments only if the BIA adopted the ruling in question.

the BIA's determination that an alien is not eligible for asylum or withholding of removal under the highly deferential "substantial evidence" test. *See Arboleda v. U.S. Att'y Gen.*, 434 F.3d 1220, 1222 (11th Cir. 2006). "'Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.'" *Ali v. U.S. Att'y Gen.*, 643 F.3d 1324, 1329 (11th Cir. 2011) (quoting *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*)). We must affirm the BIA if its decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007) (internal quotations omitted). In order for us to reverse the BIA, we must determine that the record evidence not only supports a reversal, but compels it. *See Lyashchynska v. U.S. Att'y Gen.*, 676 F.3d 962, 967 (11th Cir. 2012).

## III

In order to be eligible for asylum, an alien must meet the INA's definition of a refugee. *See* 8 U.S.C. § 1158(b)(1)(A). A refugee is defined as "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group**,** or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden is on the alien to prove her

5

refugee status and that she is eligible for asylum. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005). "In order to qualify for asylum, the applicant must establish: (1) past persecution on account of a statutorily protected ground or (2) well-founded fear of future persecution on account of a protected ground." *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964 (11th Cir. 2011) (internal quotations omitted).

An alien is entitled to withholding of removal if she establishes that her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden is on the alien to show that it is more likely than not that she would be persecuted or tortured upon her return to her home country. *See Seck*, 663 F.3d at 1364.

Ms. Fejza contends that the BIA erred in finding that the proposed social group of "women in Albania who refuse their families' arranged marriages" did not constitute a particular social group. We disagree.[5]

We have previously held that the BIA's legal definition of "particular social group" is entitled to *Chevron* deference. *See Castillo-Arias v. U.S. Att'y Gen.*, 446

---

[5] To the extent that Ms. Fejza argues in her brief that members of her proposed social group share the religious status of being Muslim, we lack subject-matter jurisdiction to consider this argument because she failed to raise it before the BIA. *See Sundar*, 328 F.3d at 1323.

6

F.3d 1190, 1196 (11th Cir. 2006). The BIA has interpreted the phrase "particular social group" to mean "a group of persons all of whom share a common, immutable characteristic." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439, 477 (BIA 1987). The BIA has specified that this shared characteristic "might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership." *Id*. But the BIA acknowledged that this common characteristic "must be one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Id*.

Since its decision in *Acosta*, the BIA has emphasized that a proposed social group's "social visibility – i.e., the extent to which members of a society perceive those with the characteristic in question as members of a social group – is of particular importance[.]" *Matter of E-A-G-*, 24 I. & N. Dec. 591, 594 (BIA 2008). The BIA has also analyzed whether a proposed social group is defined with sufficient particularity – i.e., whether it is too amorphous or indeterminate. *See In re A-M-E & J-G-U-*, 24 I. & N. Dec. 69, 74 (BIA 2007).

Here, the BIA determined that Ms. Fejza's proposed social group – "women in Albania who refuse their families' arranged marriages" – did not meet the requisite

7

standards of social visibility and particularity. The BIA concluded that Ms. Fejza's proposed social group did not meet the social visibility standard because the record did not indicate that the members of this group are a distinct and recognizable group in Albanian society. The BIA also concluded that the proposed social group did not meet the particularity standard because it "is not defined by an economic, cultural, or ethnic grouping, locality, or other characteristics that define the group in other than in an amorphous fashion."

Ms. Fejza argues that the BIA erred in not considering her gender and religion as one of the enumerated categories for asylum and withholding of removal. We are not persuaded. With regard to gender, the BIA clearly acknowledged Ms. Fejza's argument that gender was the key immutable characteristic of her proposed social group, but the BIA correctly decided that the claim is not based solely on gender, and that Ms. Fejza has not argued and the record does not show that being a woman alone was sufficient to subject her to persecution. *See Niang v. Gonzales*, 422 F.3d 1187, 1199-1200 (10th Cir. 2005) (concluding that "the focus with respect to such claims should be not on whether either gender constitutes a social group (which both certainly do) but on whether the members of that group are sufficiently likely to be persecuted that one could say that they are persecuted 'on account of' their membership"). The BIA also addressed Ms. Fejza's religion argument, but concluded

8

that there was no evidence that Ms. Fejza's refusal to enter into an arranged marriage was based upon her religion, or that her persecutors were motivated, at least in part, by her religion.

Ms. Fejza has failed to make any persuasive argument indicating that her proposed social group is either socially visible within Albanian society or is defined with particularity. And we find no evidence in the record that compels reversal of the BIA's determination that the proposed social group does not meet the requisite standards of social visibility and particularity. *See, e.g.*, *Faye v. Holder*, 580 F.3d 37, 42 (1st Cir. 2009) (affirming the BIA's decision that "women who had a child out of wedlock/are considered adulterers because they gave birth to a child allegedly not their husband's/have been abused by their husbands" did not constitute a particular social group because it was not socially visible or sufficiently particular); *Ramos-Lopez v. Holder*, 563 F.3d 855, 862 (9th Cir. 2009) (holding that proposed social group of "young Honduran men who have been recruited by gangs but refuse to join" did not constitute a particular social group); *Castillo-Arias*, 446 F.3d at 1198 (affirming the BIA's conclusion that "noncriminal informants working against the Cali drug cartel" were both not visible enough and too numerous or inchoate); *Rreshpja v. Gonzales*, 420 F.3d 551, 555 (6th Cir. 2005) (holding that the group consisting of "young (or those who appear to be young), attractive Albanian women

9

who are forced into prostitution," did not constitute a social group under the INA).

Accordingly, we affirm the BIA's determination because we do not find it to be unreasonable. *See Castillo-Arias*, 446 F.3d at 1196 (holding that we must follow the BIA's interpretation that a proposed social group does not qualify as a "particular social group," unless the interpretation is unreasonable).[6]

## IV

Finding no reversible error in the BIA's order affirming the IJ's denial of the Fejzas' applications for asylum and withholding of removal, we deny the petition.

**PETITION DENIED.**

---

[6] Because we find no error in the BIA's determination that Ms. Fejza's proposed social group does not constitute a "particular social group," we need not discuss the BIA's alternative holding that Ms. Fejza's persecution was motivated by criminal intent and based on a personal vendetta and not on account of a protected ground.

10